**VIGO COUNTY COUNCIL, Appellant,**

v.

**VIGO SUPERIOR COURT, DIVISION 1,**
and the Honorable Harold J. Bitzegaio, Judge; Vigo Superior Court, Division 2, and the Honorable Charles K. McCrory, Judge; Vigo Superior Court, Division 3, and the Honorable Hugh D. McQuillan, Judge; Vigo County Court, Division 4, and the Honorable Herbert R. Gerdink, Judge; Vigo County Court, Division 5, and the Honorable Robert H. Brown, Judge, Appellees.

No. 1079S270.

Supreme Court of Indiana.

Dec. 18, 1979.

**970**

J. D. Calbert, Calbert & Bremer, Greencastle, for appellant.

Hansford C. Mann, Terre Haute, for appellees.

GIVAN, Chief Justice.

This appeal comes to us from the trial court's order, which substantially affirmed an order of mandate issued by the Vigo Superior Court. The mandate order directed that current funding for the Vigo Superior Court system be increased in order to upgrade court personnel salaries. The Council, under TR. 60.5, requested a trial on the merits. Judge William T. Sharp of the Owen Circuit Court was appointed special judge to hear the case. At the trial evidence was presented by both parties. After trial the court sustained a major portion of the mandate, but modified it to delete the added funds for salaries at the H. Ralph Johnston Center for juveniles. This expedited appeal followed.

■ In a mandate action the issues for trial are whether the items mandated are reasonably necessary for the operation of the court and whether any specific, fiscal or other governmental interests are so severely and adversely affected that to require

that the mandate order be set aside. *State ex rel. Lake County Council v. Lake Cty. Ct.* (1977) 266 Ind. 25, 359 N.E.2d 918. With respect to whether the items mandated are reasonably necessary for the operation of the courts, Judge Emmert commented in 1954:

"The Constitution does not require that an appropriation be made before a constitutional court such as a circuit court, or a statutory court of superior jurisdiction, be authorized or empowered to provide for the reasonable and necessary operating expenses of such court. . . . The efficient administration of justice, which is the duty of the courts, cannot be made to depend upon the discretion or whim of the county council or any other administrative or executive officer of county government. . . . A court of general jurisdiction, whether named in the constitution or established in pursuance of the provisions of the constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and the safety of free institutions require the absolute integrity and freedom of actions of courts."

*Woods v. State* (1954) 233 Ind. 320, 324–5 n. 3, 119 N.E.2d 558.

In 1966, Judge Arterburn expanded upon this theme:

"The court or the judge thereof is better informed in that particular area than may be members of a legislative body or council who may desire from time to time to pull the purse strings too tight upon the operations of some court which falls within its disfavor. The courts frequently have to rule upon the acts or refusal to act of those controlling the purse strings in rendering justice. Threats of retaliation or fears of strangulation should not hang over such judicial functions."

*Carlson v. State ex rel. Stodola* (1966) 247 Ind. 631, 638, 220 N.E.2d 532, 536.

■ We do not read these authorities as giving courts carte blanche to mandate funds for salaries and expenses of opera-

tion. The judiciary may mandate only an amount necessary for the operation of the courts. By the same token, we must maintain the degree of integrity and independence so essential to a strong and effective judiciary. Fiscal independence goes hand-in-hand with this concept. Accordingly, a balance must be drawn so that reasonable, rather than excessive or inadequate, funds are provided for our courts. The judiciary simply cannot attract and keep qualified persons in skilled positions if the salaries which such persons are to be paid cannot compete with comparable employment elsewhere.

We also note that the decision of the trial judge in a mandate action must be given the same deference as trial courts are given in other kinds of cases. The trial judge weighs the evidence and judges the credibility of witnesses. We can set aside his determination as to the facts only where the evidence is without conflict and points unerringly to the opposite conclusion. See *Carroll v. State* (1976) 265 Ind. 423, 355 N.E.2d 408.

With this in mind, we turn to the facts in this case. The judges of the Vigo Superior Court met with the Vigo County Council in September 1978, to discuss the salary situation. No relief was forthcoming. In January 1979, the judges again met with the Council; again, the effort proved fruitless. On May 10, 1979, the order of mandate was issued.

Frank Walker, Auditor of Vigo County, testified that the total cost of the mandate in additional funds will be $35,000. This figure includes certain salary expenses for the Juvenile Detention Center, which is part of the Juvenile Division of the Vigo Superior Court, but does not include the H. Ralph Johnston Center mandates, which were eventually deleted by Judge Sharp in his decision. These mandated funds are to be used solely to raise the salaries of court reporters, bailiffs, administrators, probation officers, secretaries, clerks, office managers, supervisors, janitors and other personnel of the courts and the Juvenile Center. Walker testified that the county will be able to pay the costs of the mandate. He further testified that various groups of workers in county government had been given cost of living increases plus a regular raise in salary. Others were upgraded to levels higher than requested amounts. Yet, as later testimony revealed, the requests by the courts for additional appropriations for the purpose of raising the salaries of their employees were disregarded or downgraded by the Council.

The President of the Vigo County Council testified that this mandate will not prevent Vigo County from having sufficient funds to pay operating expenditures for normal county functions. He further testified that, in his view, the controversy did not really involve the actual amount of money which the increased salaries would cost the county, but rather that it was a matter of principle that the County Council should control all the purse strings and set all salaries for county employees.

Attached to the order of mandate were several bar charts which compared the salaries paid to various court employees in 10 to 15 other Indiana counties of comparable size. According to these charts, Vigo County ranks lowest in salaries paid to court reporters, court secretaries, chief adult probation officers and full-time probation officers. Vigo County is third lowest in salaries paid to court bailiffs. At the same time, Vigo County ranks fourth of 12 counties in caseloads per court.

Judge Harold Bitzegaio testified that many court employees were preparing to leave their employment in September 1978, because of the low salaries. They were persuaded to remain on the job by the judges' assurances that everything possible would be done to upgrade their wages. Without such assurances, he testified, the courts would have lost numerous employees.

Judge Charles McCrory testified—and we will take judicial notice of the same fact—that the courts require highly specialized employees. Many positions require a college education. Many others require a mastery of highly technical skills. As he stated, it is virtually impossible to operate a court system with employees who, because of low

salaries, are forced to leave after only six months or a year of employment.

The record further reveals that the increase in salaries under the mandate would still leave Vigo County court reporters the lowest paid of comparable Indiana counties. Court secretaries would be the second lowest. Court bailiffs and probation officers would fall in the middle range of salaries, while the salaries of chief probation officers would be slightly above average.

It is clear from the foregoing that the increased salaries mandated by the Vigo Superior Court are reasonable and necessary for the efficient operation of the judicial branch of government in Vigo County. The cost of living is not the only factor involved here. Rather, when we examine the degree of skill, training, dependability and trustworthiness needed for these positions with the courts, we find that the salaries mandated are reasonably necessary to insure that the Vigo judicial system will be able to compete for qualified personnel.

While it is true, as the President of the County Council testified, that the Council has the duty to set budgets and salaries, it is also true that the judiciary must be able to function effectively as a distinct and independent branch of government. We cannot allow our courts to be unduly restricted in the payment of salaries to court employees so long as such salaries are not excessive and are commensurate with comparable positions in the private and public sector.

■ The trial judge in this case is a competent, experienced trial judge who has served on the bench in a large metropolitan area and in a small, rural county. He found that the salary increases for employees at the H. Ralph Johnston Center were not reasonably necessary for the operation of the Vigo Superior Court. This apparently was based on a finding that the Johnston Center, although situated within the framework of the judiciary, is nevertheless more akin to an executive function and not integrally related to the operation of the judicial system. He further found that the remaining salary increases were in fact rea-

sonably necessary to maintain the effective operation of the judiciary in Vigo County. Without reviewing in this opinion each and every salaried position and the corresponding pay increases ordered by the mandate, suffice it to say that we find substantial support in the record for the ruling of the trial court as to the salary increases and as to the deletion of the mandate for the Johnston Center.

■ The trial court awarded $3,000 in attorney fees to counsel for the Vigo Superior Court. We have recently held that attorney fees in mandate actions should be awarded to counsel for the judge issuing the mandate. *Levco v. Auditor of State* (1979) Ind., 393 N.E.2d 749; *Hale v. Smith* (1979) Ind., 390 N.E.2d 645. There is evidence in the record that counsel spent considerable time preparing for the trial. He then spent an entire day in court at the trial and spent additional time preparing proposed findings of fact and conclusions of law, as well as a memorandum in support thereof. Counsel for the Vigo County Council were paid a fee of $3,000. Given the time involved, the skill and ability required to litigate this matter, and the total amount in controversy, we find ample evidence in the record to support the award of attorney fees.

The judgment of the trial court is in all things affirmed.

DeBRULER, HUNTER, PIVARNIK and PRENTICE, JJ., concur.