**David G. YATER and Pattee Yater, Appellants,**

v.

**HANCOCK COUNTY BOARD OF HEALTH, Commissioner of the Indiana State Board of Health; Indiana State Board of Health, Appellees.**

No. 30A01–9605–CV–152.

Court of Appeals of Indiana.

Jan. 3, 1997.

Publication Ordered March 5, 1997.

Rehearing Denied March 27, 1997.

Raymond S. Robak, Greenfield, for Appellants–Petitioners.

John L. Davis, Pritzke & Davis, Greenfield, Pamela Carter, Attorney General, Rafal Ofierski, Deputy Attorney General, Indianapolis, for Appellees–Respondents.

## ORDER

SHARPNACK, Chief Judge.

This Court having heretofore handed down its opinion in this appeal on January 3, 1997 marked "Memorandum Decision, Not for Publication"; and

The appellee, Indiana State Board of Health, by counsel, having thereafter filed its Verified Motion for Publication of Memorandum Decision and this Court having thereafter issued its order requiring the appellant show cause why the opinion previously handed down as a Memorandum Decision, Not for Publication should not now be published; and

The appellants having thereafter filed their Response to Show Cause Order on February 17, 1997, which said Response is in the following words and figures, to-wit:

(H.I.)

And the Court, having examined said Response, and being duly advised, now finds that the Motion of the appellee, Indiana State Board of Health, for Publication of Memorandum Decision should be granted and this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The Verified Motion for Publication of Memorandum Decision heretofore filed by the Indiana State Board of Health is granted and this Court's opinion heretofore handed down in this cause on January 3, 1997 marked "Memorandum Decision, Not for Publication" is now ordered published;

2. The Clerk of this Court is directed to send copies of said opinion together with copies of this Order to the West Publishing Company and to all other companies, ser-

vices and individuals to whom published opinions are normally sent.

## OPINION

ROBERTSON, Judge.

David G. and Pattee L. Yater [Yater] appeal the denial of their petition for mandate in which they requested the trial court to compel the Hancock County Board of Health and the Indiana State Board of Health [Board] to issue permits for the construction of residential sewage disposal systems (septic permits) with respect to eleven (11) remaining undeveloped building lots in the Yater's housing subdivision known as Hickory Hill. Yater also appeals the adverse judgment entered on his claim that the denial of the permits constituted a regulatory taking of the properties. Yater raises three issues, none of which constitute reversible error.

### FACTS

The facts in the light most favorable to the trial court's judgment reveal that Hickory Hill's subdivision plat, which consists of 47 building lots, was approved by the local plan commission in 1986 and recorded in 1987. Yater intended that in-ground septic sewage disposal systems be used for several of the lots. Because some of these lots were located in a flood plain, fill dirt from other areas was deposited on the lots to raise them above the 100 year flood level. Before 1990, state regulations permitted the installation of septic systems in fill dirt that had laid dormant for one year or over the winter. Thirty-five (35) of the lots in Hickory Hill were sold and developed under these regulations and septic permits were obtained from the Board as needed.

However, in December of 1990, new rules and regulations governing residential sewage disposal systems codified at 410 IAC 6–8.1 became effective. The new regulations greatly restricted the future installation of septic systems in flood plains and in fill dirt. Yater inquired about the availability of septic permits for the eleven undeveloped lots at Hickory Hill. Ultimately, after an investigation and a hearing, the Board denied Yater septic permits for the eleven lots. Deciding that it was not cost-effective to hook these lots into the sanitary sewer system, Yater took them off the market. The bank which had financed the Hickory Hills project deemed itself insecure due to Yater's inability to obtain any more septic permits, demanded payment of the loan, and ultimately initiated foreclosure proceedings.

Yater initiated the present lawsuit requesting that the trial court mandate the Board to issue septic permits for the eleven lots and/or award Yater compensation for the regulatory taking of the lots. The case was tried before the bench over five days. The trial court entered judgment (along with extensive findings) against Yater with respect to both counts of his complaint and this appeal ensued. Additional facts are supplied as necessary.

### DECISION

#### I.

#### *Petition for Mandate*

Mandamus is an extraordinary remedy, equitable in nature, and viewed with disfavor. *State ex rel. Woodford v. Marion Superior Court,* 655 N.E.2d 63, 65 (Ind.1995). Mandamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law. *Id.* The judgment of the trial court in a mandate action is entitled to the same deference as in other kinds of cases, and will be reversed only where the evidence is without conflict and points unerringly to the opposite conclusion. *Vigo County Council v. Vigo Superior Court,* 272 Ind. 344, 397 N.E.2d 969, 971 (1979).

▉▉▉　The judicial review of the action of an administrative agency is limited to a determination of 1) whether the agency possessed jurisdiction over the matter, 2) whether the order was made in accordance with proper legal procedure, 3) whether it was based upon substantial evidence, and, 4) whether it violated any constitutional, statutory, or legal principles. *Midwest Steel Erection Company, Inc. v. Commissioner of Labor of State of Indiana, and the Indiana*

*Board of Safety Review,* 482 N.E.2d 1369, 1370 (Ind.Ct.App.1985), *trans. denied.* In determining whether an administrative decision is supported by substantial evidence, the court conducting judicial review must examine the whole record to determine whether the board's decision lacks a reasonably sound basis of evidentiary support. *Id.* The court conducting judicial review of the decision of an administrative body may not substitute its own opinions and conclusions for those of the board but must give deference to the expertise of the board. *Id.*

### A.

#### Application of the Regulations Which Became Effective in 1990

■ As noted above, Yater secured approval of the plat of Hickory Hills in 1986. At that time, the applicable regulations codified at 410 IAC 6–8 permitted the installation of conventional in-ground septic systems in fill dirt and Yater was able to obtain septic permits as needed in the development of Hickory Hills. However, since the new regulations became effective in 1990, Yater has no longer been able to obtain septic permits for the lots covered with fill dirt in Hickory Hills. Yater argues that, as the owner of these eleven lots, he had a vested right to obtain septic permits under the rules that were in effect when the subdivision was approved, and the amendments to the regulations which took effect in 1990 cannot be given "retroactive" application.

■ As a general rule, applicants for a permit have a right to have their applications considered in accordance with the laws in effect *when the application is made. Department of Environmental Management v. Chemical Waste Management of Indiana, Inc.,* 604 N.E.2d 1199, 1205 (Ind.Ct.App. 1992) (Hazardous waste disposal permits), *trans. denied; Board of Zoning Appeals of the City of Fort Wayne v. Shell Oil Co.,* 164 Ind.App. 497, 329 N.E.2d 636, 642 (1975) (Building permit). In *Board of Zoning Appeals v. Shell,* we held:

Indiana demands that an application for a permit such as that sought by Shell be decided under the zoning requirements in

effect *at the time the application is filed. The right to use property in accordance with prevailing* zoning *ordinances accrues upon the filing of an application* for a building permit; and an ordinance of substantive character cannot later operate to divest such right.

329 N.E.2d at 642 (Emphasis added; citations omitted).

■ The right to use property under prevailing regulations accrues with the application of a permit. As Yater had not yet applied for septic permits with respect to the eleven undeveloped lots when the amended regulations became effective in 1990, the lots were properly subjected to the new regulations and we find no error.

### B.

#### Vague, Uncertain, or Arbitrary Regulations

■ Yater next argues that, should this court determine that the 1990 regulatory amendments are applicable, we should declare them to be unenforceable because:

a. They are not stated with sufficient precision to give fair warning to the public; and

b. The interpretations being made by the [Board] have the force and effect of law without being promulgated in accordance with IND.CODE 4–22 [which requires that regulations be definite and certain and not arbitrary].

(Yater's brief, p. 24—25). Yater complains that the regulations do not specify whether fill dirt may constitute a "soil horizon" as defined by the code as:

a layer of soil or soil material approximately parallel to the land surface and differing from adjacent genetically related layers in physical, chemical, and biological properties or characteristics such as color, structure, texture, consistency, kinds and numbers of organisms present, and degree of acidity or alkalinity.

410 IAC 6–8.1–27. Yater also complains that the code fails to define whether the term "original soil grade" pertains to the original elevation of land or the elevation after fill dirt has been added on top.

In *Indiana State Ethics Commission v. Nelson*, 656 N.E.2d 1172 (Ind.Ct.App.1995), *trans. denied*, we noted:

> Administrative decisions must be based upon ascertainable standards to ensure that agency action will be orderly and consistent. The test to be applied in determining whether an administrative agency regulation can withstand a challenge for vagueness is whether it is so indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application.

656 N.E.2d at 1176. Regulatory standards should be stated with sufficient precision to provide those having contract with the agency fair warning of the criteria by which they will be judged. *Midwest Steel Erection*, 482 N.E.2d at 1371.

Yater did not raise his vagueness challenge in the trial court before filing his motion to correct error. Yater's claim that the regulations are void for vagueness was not alleged in his complaint or in any other pleading or motion. At trial, Yater argued and presented substantial evidence to the effect that he was entitled to septic permits under either the old or the new regulations. Only after the five day trial and the entry of judgment did Yater raise the contention in his Motion to Correct Error that "laws ... should be simple and easy to comprehend."

■ A party may not raise an issue or argue a different theory of recovery on appeal that was not presented first to the trial court. *Franklin Bank and Trust Co. v. Mithoefer*, 563 N.E.2d 551, 553 (Ind.1990); *Blairex Laboratories, Inc. v. Clobes*, 599 N.E.2d 233, 237 (Ind.Ct.App.1992), *trans. denied*. A party may not raise an issue for the first time in his motion to correct error. *Evans v. Tuttle by Tuttle*, 645 N.E.2d 1119, 1121 (Ind. Ct.App.1995).

Yater's vagueness challenge has come too late in these proceedings. Therefore, this issue has been waived.

■ Even had the issue not been waived, we would be hard-pressed to find that the regulatory scheme in question was invalid due to vagueness. The new regulations provide fair warning that septic permits for areas in which fill dirt has been placed in a flood plain will be available only under limited circumstances. *See* 410 IAC 6–8.1–28(d); 33(a); 48(c) (No construction of a residential sewage disposal system may take place if the site is altered by the addition of fill material until a new evaluation has been conducted and a modified permit has been issued); 48(d); 48(g) (No septic systems may be constructed below the floodway elevation of a 100 year flood); 55(g) (A subsurface distribution system must be placed between 10 and 36 inches below the original grade). Moreover, the regulations provide that individual lots in subdivisions designed to use on-site septic sewage disposal systems for which the plats were approved before the effective date of the amendment are exempted from the provisions of section 49(4) and 52(a) of 410 IAC 6–8.1 if:

> the soils on the individual lot have characteristics which would allow the soil to be rated 'slight' or 'moderate' in accordance with guidelines as set forth in the soils manuals and handbooks of the Soil Conservation Service. The soil absorption system to serve each lot which is exempted by this section shall meet the sizing criteria of Table I. [Table I contains the sizing requirements of an absorption field based upon the permeability rating of soil]

410 IAC 6–8.1–33(c). Section 49(4) provides:

> All soil horizons at the site from the ground surface to twenty-four (24) inches below the proposed trench bottom have a loading rate of not less than twenty-five hundredths (0.25) and not more than one and twenty-hundredths (1.20) gallons per day per square foot as determined from Table V, as follows: [Table V prescribes the loading rates required for subsurface septic systems by soil texture class versus soil structure class].

Section 52(a) provides yet another formula for determining the minimum absorption area required for a gravity feed trickle flow subsurface soil absorption system.

While the regulations are certainly complex and technical in nature, they impress us as being quite comprehensive and precise. While there may be some reasonable dis-

agreement in the interpretation of the regulations in question, they cannot be said to be so indefinite that persons of common intelligence must necessarily guess at their meanings. As noted above, they provide fair warning that permits for the installation of sewage disposal systems in fill dirt on flood plains will be available only under limited circumstances. The regulations are not void for vagueness, and we find no error.

## II.

### *Regulatory Taking*

 The burden on a party attempting to show that a regulatory taking has occurred is a heavy one. *Department of Natural Resources v. Indiana Coal Council, Inc.*, 542 N.E.2d 1000, 1003 (Ind.1989), *cert. denied*, 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036. Land use regulation will not constitute an unconstitutional taking of property if the regulation 1) bears a substantial relation to the legitimate ends sought to be achieved, either by a failure of the statute as a whole or as applied to a particular piece of property; and 2) does not deprive the property owner of an economically viable use of the property. *Id.* at 1002–03. With respect to the economic impact inquiry, the land owner is not entitled to the highest and best use of his land; a taking only occurs when all reasonable use of the land is prevented by the land use regulation. *Id.* at 1004. Also, the benefits that inure to land from more restrictive ordinances must be considered along with any diminution in value that the landowner might suffer. *See Agins v. City of Tiburon*, 447 U.S. 255, 263, 100 S.Ct. 2138, 2143, 65 L.Ed.2d 106.

It cannot be reasonably disputed that the regulation of sewage disposal advances a substantial state interest. The General Assembly recognizes this by authorizing the State Board of Health to regulate the disposal of "excremental and sewage matter." Ind.Code 16–19–3–4(b)(3).

Yater has similarly failed to show that the more restrictive sewage disposal regulations have denied him an economically viable use of the land. The trial court specifically found that other sewage disposal methods were available, noting that a sanitary sewer system runs within 1200 feet of Hickory Hills.

Yater has not met his burden of demonstrating a regulatory taking. Therefore, we find no error.

Judgment affirmed.

BAKER and RILEY, JJ., concur.