**In the Matter of COURT REPORTER SALARIES IN the KNOX CIRCUIT AND SUPERIOR COURTS.**

No. 42S00-9901-MF-58.

Supreme Court of Indiana.

July 26, 1999.

Kerry D. Currier, Ramsey & Black, Vincennes, Indiana, Attorney for Respondent Knox County Council.

L. Edward Cummings, Hart Bell Cummings Ewing & Stuckey, Vincennes, Indiana,

Attorneys for Petitioners Knox Circuit and Superior Courts.

## PER CURIAM

### I. Procedural background

The judges of the Knox Circuit Court, Knox Superior Court I, and Knox Superior Court II were troubled by the current salaries earned by their court reporters and assistant court reporters. Their budget materials for 1998 submitted to the Knox County Council included requests for raises for those individuals, but the raises were not fully approved. Requests to reconsider were effectively denied by the Council. The judges of the three courts—Honorable Murphey C. Land (Circuit Court), Honorable W. Timothy Crowley (Superior I), and Honorable Jim R. Osborne (Superior II)—each filed orders of mandate, increasing the salaries of their court reporters and assistant court reporters.

These orders triggered the procedures found in Trial Rule 60.5 for resolving intra-county disputes about funding for the operation of the courts. We appointed the Honorable Barbara L. Brugnaux, Judge of the Vigo County Court, as special judge to hear evidence and to make findings with regard to the mandate orders. The three separate causes were consolidated by agreement of the parties. A consolidated trial was held. Ultimately, the special judge entered a decree containing findings of fact and conclusions of law. The decree sustained the orders of mandate.

Trial Rule 60.5 provides that the special judge's decree be reviewed by this Court unless the responsible governmental subdivision (in this case, the Knox County Council) expressly waives such review. The County Council declined to waive review. The Court issued an order governing the filing of the record of proceedings and briefs by the parties. Once fully briefed, the Court took the matter under advisement.

### II. Generally applicable legal standards

■ The issues to be decided in a mandate proceeding are whether the funds ordered paid are reasonably necessary for the operation of the court and any court-related functions and whether any specific fiscal or other governmental interests are so severely and adversely affected by the payment as to require the order to be set aside. *Morgan Circuit Court v. Morgan County Council,* 550 N.E.2d 1303, 1304 (Ind.1990). Salaries of court employees fall within the mandate authority of a court and may be ordered paid at sufficient levels to attract and retain qualified persons in service. *Id.* Salaries being paid for comparable positions in both the private and public sectors are relevant. *Id.* The court need not wait to take action until the ability to operate has actually been impaired, but there must be a clear and present danger of impairment. *Id.*

■ When we review the mandate decree of the special judge, we do not ordinarily reevaluate the evidence and we will affirm the decree if there is substantial evidence of probative value to support the judgment. *In re Mandate of Funds for the Brown Circuit Court,* 507 N.E.2d 583, 584 (Ind.1987).

### III. Factual Background

The findings of the special judge indicate that in 1997, Knox County court reporters were paid $17,410 per year and assistant court reporters received $17,310. The Circuit and two Superior Court judges requested salary increases of $2,290 for both court reporters and assistant court reporters for 1998. The County Council granted a general $900.00 salary increase to all Knox County employees for 1998, resulting in a salary of $18,310 for court reporters and $18,210 for assistant court reporters. This raise was $1,390.00 less than the judges had requested.

On December 8, 1997, the three judges attended a meeting of the County Council to request a pay raise of $1,390.00 for each court reporter and assistant court reporter [hereinafter, simply "reporters"], a total of ten employees among the three courts. As the request did not meet legal requirements governing advertising and the timing in the calendar year, the County Council could not take any action. The judges were told to submit their request at the January 5, 1998 County Council meeting. At that meeting, the request was discussed by the County Council, but no council member moved for its passage and no action was taken. On May 8,

1998, each judge filed a mandate for funds to increase the salaries of each reporter by $1,390 and this consolidated action ensued.

An exhibit produced at trial compared the salaries of Knox County reporters to those of six other surrounding counties for 1998. Although Knox County is the most populous and has the most court filings of the seven counties compared, its court reporters are the lowest paid. In all but one county, court reporters received considerably higher salaries. The requested annual salary increase of $1,390 would place court reporters second to last instead of last in the salary comparison. Among assistant court reporters in the seven counties, only Sullivan County assistant court reporters are paid less than their Knox County counterparts. The requested annual salary increase of $1,390 would still leave Knox County assistant court reporters in the same relative position.

Another exhibit admitted at the trial compared 1996 Knox County employee salaries to those of sixteen other counties of similar size. The exhibit showed that salaries for all Knox County employees were at the low end of the scale, and that Knox County court reporters were the lowest paid of court reporters in all seventeen counties.

Each judge testified as to the importance of maintaining qualified staff and the difficulty of training new court reporters. Judge Crowley lost one reporter within the last year who quit to work at a bank for higher pay and less stress. Judge Land replaced one court reporter within the past three years and a second reporter within the last year. That reporter has recently given notice that she, too, is resigning. Judge Osborne testified that he had not replaced a reporter in four years but that his reporters had discussed their salaries with him and that they were willing to stay if he made the effort to raise their salaries. Judge Crowley testified as to the amount of his time used to interview potential employees and his concern that the salaries offered would limit judges to high school graduates with little or no additional training.

The Circuit Court reporter testified that she is investigating the possibility of retiring, drawing her pension, and taking another position. The Superior II assistant court reporter testified she did not know what she would do if she did not receive the salary increase. The Superior I court reporter testified she has considered leaving and has checked ads, but has not applied for any other positions. She stated she did not feel adequately compensated for her skills.

## IV. The County Council's contentions

### A. Allegedly misleading findings.

The County Council acknowledges that factual findings should be set aside only in situations where the evidence is without conflict and points unerringly toward a conclusion opposite that reached by the special judge. *Vigo County Council v. Vigo Superior Court,* 272 Ind. 344, 346–47, 397 N.E.2d 969, 971 (1979). In this case, the County Council argues not that the facts as found are incorrect, but rather that they are incomplete to the point of being misleading.

The County Council points to evidence, not included in the special judge's findings, showing that the standard work week for county employees in Knox County is 35 hours per week, while the standard work week in four of the seven counties used in one of the salary comparisons is 40 hours. Further, it complains the special judge's findings do not note that Knox County provides a $35,000 life insurance policy and medical insurance at no cost to employees. Thus, argues the County Council, when the total compensation package is compared, Knox County reporters are perhaps not as low as the special judge's findings indicate.

This evidence is relevant, but also requires some clarification. According to the exhibit admitted into evidence upon which the County Council relies,[1] all the counties to which Knox was compared offer medical insurance to employees, and Knox is hardly alone in offering such insurance at no or very low cost to the employee. Further, all the counties to which Knox was compared provide life insur-

---

1. Association of Indiana Counties, *County Factbook 1998* (13th ed.) (admitted as Respondent's Exhibit E).

ance policies in various amounts to employees. Moreover, no evidence was offered at trial as to the actual monetary value of any of the fringe insurance benefits provided by the counties being compared to Knox County.

With regard to the length of the work week, the evidence shows that the work weeks for counties across Indiana vary from as low as 32 hours per week to as high as 40 hours per week. Of the seventeen counties of comparable size to Knox, seven have 35 hour work weeks for most county employees (including Knox); two specify 35–40 hour work weeks; three have 37.5 hour work weeks; four have 40 hour work weeks; and one was not recorded. Thus, the 35 hour work week applicable to Knox County employees is not unique. And while one might debate the effect of the length of the work week on the ability to attract and keep qualified staff, these statistics do not alter the fact that the gross pay for Knox County court reporters is the lowest in the surrounding counties and is the lowest among the seventeen counties of comparable size.

The County Council also asserts the following finding is misleading: "Judge Land replaced one court reporter within the past three years and a second reporter within the last year." (Finding 11, in part). The basis for the County Council's challenge to the finding is that it refers to the same position within the court. In other words, a reporter left within the past three years, was replaced, and then the replacement left within the past year. The County Council contends that the finding is misleading because it suggests that the two reporters who left were in two different positions. If the challenged finding is misleading, and we are unconvinced that it is, we cannot see how it in any way prejudices the County Council.

The County Council advances a similar challenge to the following finding: "Knox County courts do not have bailiffs, secretaries or auxiliary staff. The court reporters comprise the entire staff of the court." (Finding 14). The County Council admits the statement is true, but asserts it creates an "illusion" that the courts lost staff when in fact there was simply a reclassification of all personnel. Here again, if there is anything

misleading about this finding, the Court finds no prejudice to the County Council in that regard.

If the facts provide substantial evidence of probative value to support the judgment, the action of the special judge will be affirmed. *In re Mandate of Funds in Harrison Superior Court,* 674 N.E.2d 555, 556 (Ind.1996). The facts found by the special judge provide substantial evidence of probative value to support the judgment, and the additional evidence to which the County Council directs the Court does not convince us that an error has occurred.

### B. Clear and present danger to the operation of the courts.

■ As noted above, salaries of court employees may be ordered paid at sufficient levels to attract and retain qualified persons in service and the court need not wait to take action until the ability to operate has actually been impaired, but there must be a clear and present danger of impairment. *Morgan Circuit Court,* 550 N.E.2d at 1304. The County Council asserts that the evidence does not support the conclusion that a clear and present danger to the operation of the courts exist.

In summary, the evidence shows that of the ten affected positions on the courts, two have become vacant within the past year when the incumbent employees quit to take higher paying jobs and one of those positions will again become vacant, the incumbent having given notice of her intent to quit. There was testimonial evidence that the low pay would limit the courts' ability to attract qualified replacements. It is true, as the County Council asserts, that there was no evidence that any other members of the courts' current reporting staff are expressly preparing to quit. However, the recent turnover rate and the potential inability to attract qualified applicants because of the comparatively low pay supports a conclusion that a clear and present danger to the operation of the courts exists.

### C. Effect on other governmental interests.

■ This Court has also stated that among the issues to be decided in a mandate

proceeding is whether any specific fiscal or other governmental interests are so severely and adversely affected by the payment as to require the order to be set aside. *In Re Mandate of Funds for the Brown Circuit Court*, 507 N.E.2d 583, 584. The County Council asserts this standard for reversing a mandate has been met.

The evidence, as found by the special judge, shows that Knox County revenues exceeded county expenditures in 1996 by $159,940 and in 1997 by $124,749. The mandated funds, wages plus fringe benefits and the employer's share of Social Security and Medicare, would total just under $20,000 per year in additional salary appropriations. For 1997, the Knox County courts collected $392,670 in revenue for the county. The county appropriation for the three courts was $486,745.

Here again, the County Council does not specifically challenge these facts, which refute its contention that the mandate orders would severely and adversely affect local government. Although there was evidence from the county auditor and County Council members describing financial conditions in the county as generally poor, we cannot say that the evidence supports a conclusion that an additional $20,000 per year in salary appropriations would severely and adversely affect the operation of government in Knox County.

### V. Conclusion

We have reviewed the decree of the special judge and the orders of mandate and find that they should be affirmed. We also affirm the special judge's unchallenged findings with regard to the propriety of the attorney fees in this case.

All Justices concur.