**Juston E. HOLMES, Appellant–Respondent,**

v.

**Jeff and Lenore JONES, Appellees–Petitioners.**

No. 50A03–9901–CV–33.

Court of Appeals of Indiana.

Nov. 22, 1999.

Juston E. Holmes, Plainfield, Indiana, Appellant Pro Se.

James N. Clevenger, Kizer & Neu, Plymouth, Indiana, Attorney for Appellees.

## OPINION

MATTINGLY, Judge.

Jeff and Lenore Jones (the Joneses) filed a Petition for a Permanent Protective Order against Juston E. Holmes. Holmes petitioned the trial court for appointment of pauper counsel to represent him in the protective order hearing. The trial court denied his motion. Subsequently, a permanent protective order was entered against Holmes. Holmes raises four issues, which we consolidate and restate as whether the trial court erred in failing to appoint pauper counsel to represent Holmes in the hearing on the permanent protective order.[1]

We reverse and remand.

---

1. Holmes also asserts as error the trial court's failure to order the court reporter to prepare a transcript of the permanent protective order hearing. In *Campbell v. Criterion Group*, 605 N.E.2d 150, 160–61 (Ind.1992), our supreme court addressed the question whether failure to provide a pauper appellant a record of the proceedings without charge was tantamount to improperly denying an indigent party access to the appellate process. The court noted that the cost of preparing a transcript of the proceedings often runs in the hundreds or thousands of dollars and decided that a transcript would be considered "unavailable" for purposes of Ind. Appellate Rule 7.2(A)(3)(c) when an indigent person is unable to afford the costs of preparation. Rule 7.2(A)(3)(c) provides that when a transcript is unavailable a party may prepare a statement of the evidence of proceedings from the best available means, including his recollection. Holmes did, in fact, prepare and submit such a statement of the evidence. Because Holmes has not provided argument explaining why the *Campbell* rule does not apply to his appeal, we decline to review this assertion of error.

## FACTS AND PROCEDURAL HISTORY

In 1994, the Joneses adopted Holmes' son with Holmes' consent. Approximately two years later, Holmes filed pleadings challenging the adoption and requesting a determination of paternity. The trial court dismissed Holmes' action challenging the adoption and his subsequent appeal was dismissed due to the filing of a belated praecipe.

This, however, did not end Holmes' involvement with the Joneses. Holmes continued to try to contact the Joneses' child, sending birthday cards and presents to their house. The Joneses filed a Petition for a Permanent Protective Order, requesting the court to order that Holmes refrain from contacting or attempting to contact the Joneses and their child. Holmes, acting pro se, petitioned the trial court on February 21, 1998, to appoint him pauper counsel.[2] The trial court denied his petition, stating appointment of counsel was not required because Holmes had no liberty interest at stake.

Holmes filed several motions during the pendency of the permanent protective order matter, apparently seeking to reopen his challenge to the adoption. The trial court denied all of these motions. The trial court granted the Joneses' petition, entering an Order prohibiting Holmes from contacting the Joneses and their child. Holmes then asked that the trial court permit him to proceed on appeal in forma pauperis, and that the court reporter prepare a complete copy of the transcript of proceedings. The trial court granted Holmes leave to proceed in forma pauperis. In denying Holmes' request for a complete copy of the transcript of proceedings from the permanent protective order hearing, the trial court suggested that Holmes submit a Statement of the Evidence as permitted in *Campbell v. Criterion Group*, 605 N.E.2d 150, 160–61 (Ind. 1992). Holmes did, in fact, submit such a statement.

## DISCUSSION AND DECISION

■ Holmes argues that the trial court erred when it failed to appoint counsel to represent him at the hearing on the permanent protective order.[3] Ind.Code § 34–1–1–3[4] (the "pauper counsel statute") provides that

[a]ny poor person not having sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as a poor person. The court, if satisfied that such person has not sufficient means to prosecute or defend the action, shall admit the applicant to prosecute or defend as a poor person, and shall assign him an attorney to defend or prosecute the cause, and all other officers requisite for the prosecution or defense, who shall do their duty therein without taking any fee or reward therefor from such poor person.

The trial court's order denying Holmes' motion for appointment of pauper counsel did not address the pauper counsel statute. Rather, it appears the denial was premised

---

2. In his motion for appointment of pauper counsel, Holmes included a "Verification and Certificate of Indigency" which stated he was incarcerated, was wholly indigent, earns approximately $10 per month at the Plainfield Correctional Facility, that he has no other income, assets, or property of value, that his prison trust account had less than $30 in it, and that he was unable to hire private counsel. (R. at 13.) The trial court did not address in its order denying the motion for appointment of pauper counsel whether Holmes was indigent. However it did, on December 1, 1998, grant Holmes' petition for leave to prosecute this appeal as a poor person.

3. In his brief, Holmes also argues that the trial court erred when it failed to appoint counsel to represent the adopted child. However, this issue is waived since he failed to raise it at the trial court level. *See Stepp v. Duffy*, 686 N.E.2d 148, 153–54 (Ind.Ct.App. 1998).

4. Now Ind.Code §§ 34–10–1–1 and –2.

on due process grounds as reflected by the court's statement that "there is no liberty interest of the Respondent involved, such as to require the appointment of counsel for him." (R. at 33.)

■ The Joneses correctly note that the right to appointment of counsel as a due process protection is not absolute. In *E.P. v. Marion County Office of Family and Children*, 653 N.E.2d 1026, 1031 (Ind.Ct. App.1995), we stated that:

The Fourteenth Amendment to the United States Constitution requires that no person shall be deprived of life, liberty, or property without due process of law. Although due process has never been precisely defined, the phrase expresses the requirement of "fundamental fairness." *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981), *reh'g denied*. In the context of representation of counsel, the fundamental fairness requirement does not mandate that counsel shall be appointed in all cases. To the contrary there is a presumption against appointment of counsel where the litigant's physical liberty is not at stake. "[A]n indigent litigant has a [Fourteenth Amendment due process] right to appointed counsel *only when,* if he loses, he may be deprived of his physical liberty." *Lassiter*, 452 U.S. at 26–27, 101 S.Ct. at 2159 (emphasis added). This presumption may be overcome, however, where other elements of due process so require. *Id.; see also Kennedy v. Wood* (1982), Ind.App., 439 N.E.2d 1367, *reh'g denied.* In determining whether an indigent litigant may be entitled to court appointed counsel we must first evaluate (1) the private interests at stake, (2) the government's interest, and (3) the risk that the procedures used will lead to an erroneous decision. *Lassiter*, 452 U.S. at 25–27, 101 S.Ct. at 2159. Next, we balance these elements against each other and weigh them against the presumption that there is a right to appointed counsel only where

the indigent, if unsuccessful, may lose his or her personal freedom. *Lassiter*, 452 U.S. at 25–27, 101 S.Ct. at 2159.

■ However, the pauper counsel statute creates an independent right to counsel for indigent litigants. See, for example, *Campbell*, where our supreme court separately analyzed constitutional, common law, and statutory authority for pauper appeals, and concluded that the pauper counsel statute, "which permits a court to admit an indigent to prosecute or defend an action[,] conveys the power to permit an appellant to appeal *in forma pauperis.*" 605 N.E.2d at 155. Furthermore, the independent right created by the statute appears, by its own terms and by its interpretation in the Indiana decisions, not to be limited to situations where the indigent litigant's personal freedom is at stake. The statute provides that once a court is satisfied that a litigant is indigent, it "*shall* admit the applicant to prosecute or defend as a poor person, and *shall* assign him an attorney to defend or prosecute the cause." Ind.Code § 34–1–1–3 (emphasis supplied).

■ Thus, while the threshold determination of indigency is a subject for the sound discretion of the trial court with which we will not interfere absent a very clear showing of abuse, *Campbell*, 605 N.E.2d at 159, the statute permits no such discretion in the decision whether to grant a request for appointed counsel once indigency is established. We addressed the limits of this discretion in *E.P.*, 653 N.E.2d at 1034:

[T]he statute makes clear that once the trial court is satisfied that the applicant has insufficient financial resources to proceed in an action the court "shall assign him an attorney." The trial court's determination of whether a litigant has sufficient means to prosecute or defend an action is reviewed for an abuse of discretion.

... Under the provisions of I.C. § 34–1–1–3 all persons in any civil action are entitled to court-appointed counsel, pro-

vided counsel is requested and the evidence reveals the person does not have sufficient means to prosecute or defend the action.

(Citation omitted).

We are concerned about the implications of this statute, which we have interpreted to require trial courts to appoint counsel for all indigent litigants. It places no boundaries or limits on the type or number of lawsuits for which indigent litigants can demand court-appointed counsel. Further, trial courts have no discretion to deny a request for court-appointed counsel once a litigant's indigence is established.

■ Thus, on its face, the statute seems to require a trial court to appoint counsel for indigent prisoners to bring lawsuits against the very correctional facilities where they are housed. If an indigent couple decides to divorce, the statute entitles both parties to court-appointed counsel upon request. Further, the statute apparently requires a trial court to appoint counsel to represent an indigent defendant in any lawsuit which is brought against him or her.

The statute provides no guidance as to how the court can supply the demand for court-appointed counsel for the indigent. Nor does it provide any mechanism for funding the expense. We are concerned that this statute, as written, puts trial courts in the awkward position of becoming a procurer of legal services for the indigent.[5] In *Board of County Comm'rs v. Pollard,* our supreme court noted that attorneys could not be compelled by a court order to render professional services without compensation. 153 Ind. 371, 372, 55 N.E. 87, 87 (1899). However, the supreme court noted that the pauper counsel statute does not require a county to pay the fees of an attorney who renders services to the indigent.

In response to the obvious question of how trial courts are expected to procure the services of attorneys to represent the indigent when those attorneys will not be paid, the supreme court stated:

The statute provides for and contemplates any gratuitous services on the part of the attorney and other officers. We do not think the courts are authorized to add to the statute the qualification that the fees of the attorney shall be allowed by the court, and paid by the county. Such a construction would, in our opinion, open the door to grave abuses, and might subject the revenues of the county to serious drains. The statute refers to the attorney as one of the officers of the court, and such he doubtless is, and such he has always been considered. When admitted to practice, he takes an oath to faithfully perform his duties as an attorney of the court. One of those duties, as defined by the statute, is, "never to reject from any consideration personal to himself the cause of the defenseless or oppressed." Burns' Rev. St. 1894, § 979, subsec. 8. We cannot believe that the construction we have put upon this section will result in any practical hardship, or that the courts will have any difficulty in commanding the services of able and conscientious members of the bar, when such services are required for the protection of the poor and defenseless, whose rights or wrongs are the subjects of judicial inquiry in civil actions. The eager desire of young practitioners to take part in the exciting contests of the bar, the opportunity afforded to the ambitious to achieve reputation by a display of forensic talent, and the higher motives supplied by feelings of humanity and benevolence, will, as we believe, in every case secure a prompt response to the appointment of the court where the

---

**5.** We note that in *Blythe v. State,* 4 Ind. 525 (1853) our supreme court determined the predecessor pauper counsel statute was unconstitutional to the extent that it required at-

torneys who were appointed by a court to prosecute or defend on behalf of an indigent client to do so without compensation.

gratuitous services of an attorney are called for.

*Id.* at 374, 55 N.E. at 88.

We decline to speculate on the continued viability of the *Pollard* approach in light of the realities of present-day law practice. We note, however, that the Bench and Bar of this state continue to grapple with the concerns and aspirations articulated in the *Pollard* case one hundred years ago. In 1997 our supreme court adopted a voluntary attorney pro bono plan, *see* Ind. Professional Conduct Rule 6.5, which calls for the formation of a district pro bono committee in each of the state's fourteen judicial districts. Each committee is directed to prepare each year a district pro bono plan "which, to the extent possible, should include ... providing resources for litigation and out-of-pocket expenses for pro bono cases." *Id.* § 6.5(h)(3). The district plan also "may include opportunities such as ... representing persons of limited means through case referral[,]" *id.* § 6.5(i)(1), and acting as co-counsel with civil legal assistance providers and other pro bono lawyers. *Id.* § 6.5(i)(5). Another rule also promulgated in 1997 specifies that one of the purposes for which interest paid on lawyers' trust accounts is designated is to "assist or establish approved pro bono programs as provided in Ind. Prof. Cond. R. 6.5." *Id.* § 1.15(d)(8)(C).

▬ These concerns aside, however, we must presume that the words appearing in the statute were intended to have meaning and must endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Clark v. Estate of Slavens*, 687 N.E.2d 246, 250 (Ind.Ct.App.1997). Further, when construing a statute, we presume the legislature was aware of any court decisions upon the subject matter of the legislation being construed. *Sightes v. Barker*, 684 N.E.2d 224, 227 (Ind.Ct.App. 1997), *trans. denied.* Thus, the legislature is presumed to have been aware, when it recodified the pauper counsel statute in 1998, of our decision in *E.P.*, which held that all persons in civil actions are entitled to court-appointed counsel when counsel is requested and the litigant is without sufficient means to prosecute the action.

In light of Holmes' uncontroverted allegations in his motion that he was incarcerated, has no income, property, or assets, and that he could not afford to hire counsel, we are unable to reconcile the denial of Holmes' motion with the mandatory language of the statute. We must reverse and remand to the trial court with instructions to appoint counsel to represent Holmes at a rehearing on the permanent protective order or, in the alternative, to conduct a hearing to determine whether Holmes is indigent.[6]

Reversed and remanded.

SULLIVAN, J., and RILEY, J., concur.

---

**6.** We decline to address any of Holmes' continued efforts to assail the adoption of the minor child and the termination of his parental rights. His opportunity to do so has passed. We also will not address Holmes' arguments that the trial court was biased and that he was denied the right to confront witnesses against him, as he has failed to provide any evidence that the trial court was prejudiced toward him, and admitted that he had sent birthday cards and letters to the child. The Joneses were thus entitled to the protective order, and Holmes desired to confront witnesses only in order to reopen and readdress the termination/adoption proceedings. This, as previously stated, we will not do.