**David T. SHOLES, Appellant–Respondent,**

v.

**Christine K. SHOLES, Appellee–Petitioner.**

No. 27A02–9906–CV–445.

Court of Appeals of Indiana.

Aug. 14, 2000.

David T. Sholes, Michigan City, Indiana, Appellant Pro Se.

David W. Stone, IV, Anderson, Indiana, Georgianne F. Bolinger, Bosley, Schatz & Bolinger, Marion, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Respondent–Appellant, David T. Sholes (David), appeals the trial court's denial of his motion to set aside a judgment in a dissolution action filed by Petitioner–Appellee Christine K. Sholes (Christine).

We reverse.

The dispositive issue is whether the trial court erred in denying both David's motion for appointment of pauper counsel and his motion for continuance of the T.R. 60(B) hearing.

On February 10, 1998, Christine filed a petition to dissolve her marriage to David. The record discloses that service of the petition and summons upon David was accomplished by certified mail, and that the return receipt was filed with the court on February 17, 1998.

On April 14, 1998, the trial court held a final hearing on the petition. David, who was then and is now serving a life sentence without chance of parole in the Indiana State Prison at Michigan City, did not appear in person or by an attorney. On April 16, 1998, the trial court issued a decree and final order dissolving the marriage and dividing the marital property.

David subsequently filed a belated praecipe (February 19, 1999), a motion to set aside the judgment (April 15, 1999) [1], and a motion to correct error (May 20, 1999). The trial court set the motion for relief from the decree (hereinafter, the "60(B) motion") for a hearing April 29, 1999. The hearing, which was not recorded, was held on that date. Prior to the hearing on the motion, David filed a motion requesting pauper counsel and for transport from the prison to the hearing. Both motions were denied. On the day of the hearing, David

1. David denominated this filing as a "Motion for Relief from Default Dissolution Decree."

filed a motion for a continuance of the hearing. This request was denied, as was his 60(B) motion. The motion to correct error pertaining to the trial court's denial of the other motions was also denied.

Although in his Verified Request for Appointment of Pauper Counsel, Sholes did not specifically cite I.C. 34–1–1–3 (now I.C. 34–10–1–1 and 2) (Burns Code Ed. Repl.1998) as authority for his right to appointment of such counsel, it is clear that under oath he claimed indigency and sought appointment of counsel as his right.

The matter is clearly governed by the statute and by a recent decision of another panel of this court in *Holmes v. Jones* (1999) Ind.App., 719 N.E.2d 843. In *Holmes*, the court expressed its concerns with the implications of the statute which "places no boundaries or limits on the type or number of lawsuits for which indigent litigants can demand court-appointed counsel." 719 N.E.2d at 847. Nevertheless, the court appropriately held that the clear and unambiguous language of the statutory provisions was no doubt intended to have meaning, and that absent a clearly manifested purpose to provide otherwise, that meaning must be given effect by the court.

By even stronger reason than was present in *Holmes*, we are constrained to honor the mandate of the statute giving the right to court-appointed counsel in all civil actions. Following the *Holmes* decision, the Second Regular Session of the 111th Indiana General Assembly convened and not only had opportunity to address the matter but in three separate bills did so.

On January 10, 2000, Senate Bill 414, which gave the courts discretion under exceptional circumstances to appoint counsel for indigents in civil matters but did not require such appointment, was introduced. On February 7, 2000, the bill passed the Senate 42–8. It was then referred to the House of Representatives and assigned to committee but received no further attention. A quite similar bill was introduced in the House of Representatives on January 11, 2000, as House Bill 1348. However, following referral to committee, it too received no further attention. In addition, another Senate Bill, No. 258, which would have eliminated the general duty of a county to provide counsel for indigents in civil actions, was introduced on January 10, 2000, and on that date was assigned to committee but died in that body.

It is therefore quite clear that our legislature has consciously decided to retain in place the obligation upon courts to appoint counsel for indigent civil litigants in all situations. It is not our prerogative to look behind that unambiguous policy decision, a decision made not once but three separate times during the legislative session.[2]

For the reasons set forth, the decision required of us is clear and unmistakable. We therefore reverse and remand with instructions to vacate all proceedings which were conducted after the filing of Sholes' Verified Request for Appointment of Pauper Counsel, to appoint pauper counsel for Sholes and for further proceedings not inconsistent with this opinion.

VAIDIK, J., concurs.

HOFFMAN, Sr. J., dissents with opinion.

### HOFFMAN, Senior Judge, dissenting

Under the circumstances of this case, I believe that the trial court was within its

---

2. We readily acknowledge that the recent legislative session was the biennial short session during which the focus is placed primarily upon budgetary matters and in which there is great competition for time and legislative resources to be given to more bills than can reasonably be fully and fairly considered. Be that as it may, the three bills referenced herein would seem to have substantial budgetary impact upon all counties within the state and the nature of the session would not seem to dilute the fact that the lack of legislative action was a conscious policy decision.

discretion in denying both the request for pauper counsel and the motion for continuance. Therefore, I respectfully dissent.

In order to qualify for the appointment of pauper counsel pursuant to statute, a person must show that he is indigent. Ind.Code § 34–10–1–1 and 2. It is within the trial court's discretion to determine whether the person requesting pauper counsel has made the requisite showing. *In re Johnson*, 415 N.E.2d 108, 111 (Ind. Ct.App.1981).

Here, the record discloses that David waited until the day of the 60(B) hearing to file his request for pauper counsel. David was aware of both his alleged indigency and his need of court-appointed counsel well before the time that he filed his request and motion. Under the circumstances, the trial court was within its discretion in determining that David did not timely meet his burden of showing that he was indigent.

The record in this case also discloses that David waited until the day of the 60(B) hearing to file his motion for continuance. The grant or denial of a motion for a continuance rests in the sound discretion of the trial court, and it will be reversed only for an abuse of that discretion. *Hoehn v. Hoehn*, 716 N.E.2d 479, 485 (Ind. Ct.App.1999).

As a general proposition, I believe that a trial court does not abuse its discretion when it refuses to grant a continuance filed on the day of the hearing. More specifically, I observe that David states as part of his "Verification and Affidavit of Indigency" that he is "wholly indigent and incapable of hiring a private attorney." (R. 77). In light of this verified statement to the trial court, it was not an abuse of discretion to deny the continuance as the grant thereof would not transform David's incapability into the ability to hire private counsel.

Furthermore, David did not request that the trial court appoint pauper counsel under Ind.Code § 34–1–10–1 and 2. In fact, he does not raise the propriety of such

statutory appointment on appeal. Instead, David asserts a constitutional right to counsel. This is the issue that is before us on appeal.

There is a presumption against appointment of counsel where the litigant's physical liberty is not at stake, and therefore, as a general rule, an indigent litigant has a due process right to appointed counsel "only when, if he loses, he may be deprived of his physical liberty." *E.P. v. Marion County Office of Family and Children*, 653 N.E.2d 1026, 1031 (Ind.Ct.App.1995). This presumption may be overcome, however, where other elements of due process so require. In determining whether an indigent litigant may be entitled to court-appointed counsel, courts must evaluate (1) the private interests at stake, (2) the government's interest, and (3) the risk that the procedures used will lead to an erroneous decision. *Id.* The courts then balance these elements against each other and weigh them against the presumption. *Id.*

The private property interests in dissolution cases, while important, are certainly less substantial than the parental rights discussed in *E.P. See id.* at 1031–32 (holding that such rights do not override the presumption that there is no right to appointed counsel unless the litigant's physical liberty is at stake). Additionally, the State's non-party interest in the orderly dissolution of marriages is a significant counter-balance to those property rights. Finally, as stated in *E.P.*, I acknowledge that litigating any case without the benefit of counsel may increase the risk of an erroneous decision. *Id.* at 1032. However, after balancing David's private property interests, the counter-balancing State's interests, and the increased risk of an erroneous decision, and weighing them against the presumption that there is no right to appointed counsel unless the litigant's liberty is at stake, I conclude that due process does not require the appointment of pauper counsel in this case.

Because the majority *sua sponte* raises the application of Ind.Code § 34–1–10–2 in

this case, it is appropriate to point out the deficiencies of the statute. The statute states that upon a finding of indigency, a trial court "shall ... *assign* an attorney to defend or prosecute the cause." (Emphasis supplied). The statute also states that an attorney "*required* to prosecute or defend the action shall do [his or her] duty in the case without taking any fee or reward from the indigent person." (Emphasis supplied). The statute gives the trial court no discretion to refuse to make such an assignment, and by the use of the word "assign" rather than "request" or some other non-binding term, the statute gives the attorney assigned to the cause no discretion to refuse such assignment or no possibility of being paid by his assigned client. There is, of course, no possibility of compensation for such services from public sources. *See Holmes v. Jones*, 719 N.E.2d 843 (Ind.Ct.App.1999)

In requiring such service without compensation, I believe the statute runs afoul of the Indiana Constitution, specifically Article 1, § 21, providing that "[n]o person's service shall be demanded, without just compensation," and Article 1, § 37, providing that "[t]here shall be neither slavery nor involuntary servitude, within the State...." I am aware that there is case law that attempts to interpret the statute in a manner that does not violate our constitution. *See e.g., Board of Commissioners of Howard County v. Pollard*, 153 Ind. 371, 55 N.E. 87 (1899) (interpreting a predecessor statute containing wording similar to that used in Ind.Code § 34–10–1–2). However, I believe that this case law ignores the plain meaning of the language used in the statute. By its plain language, the statute is in violation of our constitution. Therefore, the majority erred in *sua sponte* applying the statute to the facts of this case.

I would affirm the trial court on this issue.