David T. SHOLES, Appellant
(Respondent Below),

v.

Christine K. SHOLES, Appellee
(Petitioner Below).

No. 27S02–0112–CV–655.

Supreme Court of Indiana.

Dec. 21, 2001.

David T. Sholes, Michigan City, IN, Appellant pro se.

Kenneth J. Falk, Indianapolis, IN, Attorney for Amicus Curiae Indiana Civil Liberties Union.

Thomas M. Frohman, Jamie Andre, Bloomington, IN, Attorneys for Amicus Indiana Legal Services, Inc.

Stephen D. Brown, Michigan City, IN, Attorney for Amicus Curiae Lifers United for Penal Progress, Inc.

David W. Stone, Anderson, IN, Georgianne F. Bolingerk, Marion, IN, Attorneys for Appellee.

Rebecca T. Kasha, Jon Aarstad, Evansville, IN, Attorneys for Amicus Curiae the Evansville Bar Association.

Jeffrey K. Baldwin, Danville, IN, Gregory W. Black, Plainfield, IN, Attorneys for Amicus Curiae Hendricks County Bar Association.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

We grant transfer in this civil appeal to determine whether Indiana Code section 34–10–1–2 requires appointment of counsel for civil litigants who are without "sufficient means to prosecute or defend an action." We hold: (1) appointment of counsel under the statute is mandatory; (2) counsel appointed under the statute must be compensated; and (3) Indiana Trial Rule 60.5 gives trial courts the power to order payment of appointed counsel, but (4) the same considerations governing other court-mandated funding apply in determining whether mandate is appropriate, and (5) counsel for whom mandate of compensation is not appropriate under Trial Rule 60.5 cannot constitutionally be appointed under the statute. In sum, in ruling on an application for appointed counsel in a civil case, the trial court must determine whether the applicant is indigent, and whether the applicant, even if indigent, has means to prosecute or defend the case. If those criteria are met, and there is no funding source or volunteer counsel, the court must determine whether the mandate of expenditure of public funds is appropriate in that case.

### Factual and Procedural Background

On February 10, 1998, Christine Sholes filed a petition for dissolution of marriage from her husband David Sholes, who is serving a life sentence in the Indiana State Prison. The trial court held a final hearing on the petition on April 14, 1998, and entered a decree of dissolution on April 16. Christine was awarded all marital property that was not in David's possession. In addition, the court entered a qualified domestic relations order directing General Motors Corporation, David's former employer, to pay 100% of David's retirement benefits to Christine. Ten months later, on February 19, 1999, David, pro se, filed a "Verified Motion to Proceed as Pauper." No ruling on that motion appears in the record. On March 3, David filed another "Verified Motion to Proceed as Pauper" in

connection with a request for a record of proceedings. The court denied David's request for a record and made no finding as to David's indigence.

On April 15, 1999, David filed a motion to set aside the judgment and the trial court scheduled a hearing for April 29. On the day of the hearing, David filed a "Verified Request for Appointment of Pauper Counsel." Though David did not explicitly rely on Indiana Code section 34–10–1–2, he stated that he was "wholly without funds to pay for an attorney due to his indigent status." The trial court denied David's request without making any findings. On June 16, 1999, the trial court found "that [David] is without sufficient funds or means" to pay for a transcript of the record for purposes of his appeal, and ordered one prepared at public expense.

The Court of Appeals reversed the trial court's denial of David's motion to set aside the judgment. *Sholes v. Sholes*, 732 N.E.2d 1252 (Ind.App.2000). In doing so, the court relied on Indiana Code sections 34–10–1–1 and 34–10–1–2. Those sections provide:

Sec. 1. An indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person.

Sec. 2. If the court is satisfied that a person who makes an application described in section 1 of this chapter does not have sufficient means to prosecute or defend the action, the court shall:

(1) admit the applicant to prosecute or defend as an indigent person; and

(2) assign an attorney to defend or prosecute the cause.

All officers required to prosecute or defend the action shall do their duty in the case without taking any fee or reward from the indigent person.

Ind.Code §§ 34–10–1–1, –2 (1998). The Court of Appeals concluded that David had presented sufficient evidence that he was indigent and that all proceedings after David's request for counsel must be vacated. *Sholes*, 732 N.E.2d at 1253.

Christine sought transfer. Because of the importance of the issues presented, this Court issued an order inviting amicus curiae briefs, and received responses from the Evansville Bar Association, Hendricks County Bar Association, Indiana Legal Services, Inc., Indiana Civil Liberties Union, and Lifers United for Penal Progress. We invited comment as to the following issues: (1) Does Indiana Code section 34–10–1–2 require appointment of counsel for civil indigent litigants; (2) if so, must the attorney be paid; and (3) if the attorney is entitled to be paid, who is responsible for the payment?

Though not identical, the arguments presented by amici may be summarized as follows: (1) section 34–10–1–2 imposes a mandatory duty on the courts to appoint counsel for civil litigants who meet the statute's requirements; and (2) section 34–10–1–2 does not forbid compensation to appointed counsel.[1] The central issue, according to amici, is whether the statute allows for payment of appointed counsel. They argue that if compensation is not provided, then the statute is unconstitutional. Amicus Hendricks County Bar Association also posits that appointments under the statute would impose an unequal burden on counties that house the state's

---

1. Amicus Lifers United for Penal Progress contends that section 34–10–1–2 does not require compensation for appointed counsel,

but the remaining amici all argue that payment is required.

correctional facilities. Both Indiana Legal Services, Inc. and the Indiana Civil Liberties Union contend that the counties are responsible for compensating the appointed counsel.

We agree with the Court of Appeals that the statute does not confer discretion on the trial court to deny counsel. And, as explained below, amici are correct that the Indiana Constitution requires that appointed counsel be compensated. However, in the absence of any legislatively prescribed source of funding, a court's ability to direct that counsel be appointed is circumscribed by the doctrines surrounding the court's ability to order the expenditure of public funds. Ultimately, then, the decision to appoint counsel for an indigent litigant in a civil case turns on the court's assessment of the nature of the case, the genuineness of the issues, and any other factors that bear on the wisdom of mandating public funds for that purpose.

## I. Indiana Code Section 34–10–1–2 Requires Appointment of Counsel

 The Court of Appeals concluded that the legislature, by failing to amend section 34–10–1–2 in light of *Holmes v. Jones*, 719 N.E.2d 843 (Ind.Ct.App.1999), has approved of *Holmes'* holding that the unambiguous language of the statute requires appointment of counsel. *Sholes*, 732 N.E.2d at 1253. David argues that legislative acquiescence analysis is unnecessary to the Court of Appeals' holding

because the legislature has already expressed its intent in the original enactment of section 34–10–1–2. We think David is essentially correct. Courts are obliged to respect the plain language of a statute. *Bartlett v. State*, 711 N.E.2d 497, 501 (Ind. 1999). Indiana case law "presumptively treats 'shall' as mandatory ... 'unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning.'" *Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 947 (Ind.1999) (quoting *United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.*, 549 N.E.2d 1019, 1022 (Ind.1990)). We see no basis in the statute to suggest any unusual or stylized meaning of a commonly understood word. Moreover, "when a statute is unambiguous, a court must apply the plain and obvious meaning and not resort to other rules of construction." *Brownsburg Area Patrons Affecting Change v. Baldwin*, 714 N.E.2d 135, 139 (Ind.1999). As a matter of construction, we agree that the statute by its terms confers no discretion on the trial court to deny counsel if its terms are met.

We reach this conclusion on the basis of the statute, not on any notion of legislative acquiescence. As the Court of Appeals noted, the legislature, in 2000, "not only had [the] opportunity to address [the *Holmes* decision] but in three separate bills did so." *Sholes*, 732 N.E.2d at 1253.[2]

---

2. The Court of Appeals described the 2000 legislative action regarding section 34–10–1–2 as follows:

> On January 10, 2000, Senate Bill 414, which gave the courts discretion under exceptional circumstances to appoint counsel for indigents in civil matters but did not require such appointment, was introduced. On February 7, 2000, the bill passed the Senate 42–8. It was then referred to the House of Representatives and assigned to committee but received no further atten-

tion. A quite similar bill was introduced in the House of Representatives on January 11, 2000, as House Bill 1348. However, following referral to committee, it too received no further attention. In addition, another Senate Bill, No. 258, which would have eliminated the general duty of a county to provide counsel for indigents in civil actions, was introduced on January 10, 2000, and on that date was assigned to committee but died in that body.

*Sholes*, 732 N.E.2d at 1253.

A gridlock in a single session resulting in the failure of these different approaches to amending the statute is not a firm indication of legislative directive. The United States Supreme Court recently observed that failed legislative proposals are a dangerous ground on which to rest statutory interpretations "because a bill can be proposed or rejected for any number of reasons." *Solid Waste Agency v. United States Army Corps of Eng'rs*, 531 U.S. 159, 160, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). We have found longstanding and repetitive legislative inaction to be significant, *Durham ex rel. Estate of Wade v. U–Haul Int'l*, 745 N.E.2d 755, 759 (Ind.2001), but rarely, if ever, is that acquiescence found in a single legislative session's failure to act to overturn a recent decision.

After the Court of Appeals issued its decision in this case, the 2001 session of the General Assembly again addressed section 34–10–1–2. Senate Bill 104, as introduced, would simply have repealed both sections 34–10–1–1 and 34–10–1–2. Ultimately, both houses appeared to agree on discretionary rather than mandatory appointment of counsel. However, the houses failed to reach agreement on the means of funding appointed counsel. The conference committee then recommended repealing the sections. However, the session expired without action on the conference committee report, leaving the statute again unscathed.

This history is of some interest, because the conference committee report included a "synopsis" of the committee's recommendation, which describes the proposal to repeal the statute as eliminating "the general duty of a county to provide an attorney to an indigent person involved in civil litigation." This seems to reflect the understanding of the General Assembly that section 34–10–1–2, as it stands today, imposes a mandatory duty of appointment on

courts if an indigent applicant is without sufficient means to prosecute or defend a civil action. Although both houses appeared to desire a change in the statute, amendatory legislation died in the last days of a difficult session despite the conference committee's agreement. We cannot construe this history as either a legislative acquiescence in the *Holmes* holding or a rejection of the view that the statute is to be read literally. This leaves us where it found us: "shall" means shall.

Finally, Christine argues that "shall" must be interpreted as "may," because a policy of appointing counsel for indigent litigants creates the "absurd" result of giving "all indigents an absolute right to appointment of pauper counsel." As explained in Part II, this is not true in all cases, even under the literal terms of the statute. And, for the reasons given in Part IV, the trial court's judgment in assessing the need for counsel at public expense is preserved by constitutional considerations.

## II. Statutory Procedure for Appointment of Counsel

The procedure for the trial court to determine when counsel must be appointed is: (1) the litigant is to apply to the trial court for leave to proceed "as an indigent person"; and (2) if the trial court finds that the applicant is both indigent and without sufficient means to prosecute or defend the action, the trial court shall appoint counsel for the applicant.

Section 34–10–1–1 places the burden upon the party seeking to proceed "as an indigent person" to demonstrate that he or she is indigent and without "sufficient means." However, section 34–10–1–2 does not require the applicant to make an independent, formal request for appointed counsel. Rather, once the trial court finds that the applicant is indigent and without

"sufficient means to prosecute or defend" the action, it must sua sponte appoint counsel. Though the considerations of indigence and "sufficient means" are similar in some situations, they are not identical.[3]

## A. Indigence

In *Moore v. State*, 273 Ind. 3, 7, 401 N.E.2d 676, 678–79 (1980), this Court discussed at length several factors to be considered when determining whether a party is indigent:

> First, it appears clear that the defendant does not have to be totally without means to be entitled to counsel. . . .
>
> The determination as to the defendant's indigency is not to be made on a superficial examination of income and ownership of property but must be based on as thorough an examination of the defendant's total financial picture as is practical. The record must show that the determination of ability to pay includes a balancing of assets against liabilities and a consideration of the amount of the defendant's disposable income or other resources reasonably available to him after the payment of his fixed or certain obligations.

## B. Sufficient Means to Prosecute or Defend

Whether the applicant has "sufficient means" goes beyond a mere snapshot of the applicant's financial status. Rather, the court must examine the applicant's status in relation to the type of action before it. *Cf. Campbell*, 605 N.E.2d at 159 ("[T]he standard governing a finding of indigency is closely related to the purpose for which the status is sought."). If the action is of the kind that is often handled by persons of means without counsel, the court may find that even an indigent applicant has "sufficient means" to proceed without appointed counsel. For example, many forms of small claims actions are typically prosecuted and defended pro se even by persons of means. Similarly, cases that have their own ability to fund counsel are another general category where appointed counsel may be inappropriate. The marketplace for lawyer services can value cases often handled on a contingent fee basis. The same is true of litigation governed by fee shifting statutes. In these cases, an indigent may well be found to have sufficient means to prosecute or defend the action.

We do not mean to create blanket categories of cases in which counsel should never be appointed. Rather, the court should look to the particular issues presented in the action and make a determination of whether the indigent applicant requires appointed counsel. A routine landlord-tenant dispute may present such straightforward issues that the ordinary litigant requires no counsel. In such a dispute, the indigent applicant has "sufficient means" to prosecute or defend the action without appointed counsel. On the other hand, the same dispute might present complexities or involve such significant precedent that proceeding pro se would disadvantage the ordinary litigant, and appointed counsel may be appropriate.

---

**3.** Several cases discussing the implication of sections 34–10–1–1 and 34–10–1–2 generally state the analysis as focusing on whether the applicant is "indigent." *See, e.g., Campbell v. Criterion Group*, 605 N.E.2d 150, 159 (Ind. 1992). We understand those cases to have incorporated the "sufficient means" analysis within their general discussion of indigence.

Both matters are left to the court's sound discretion. *E.P. v. Marion County Office of Family and Children*, 653 N.E.2d 1026, 1034 (Ind.Ct.App.1995) ("The trial court's determination of whether a litigant has sufficient means to prosecute or defend an action is reviewed for an abuse of discretion.").

### III. Appointed Counsel Must Be Compensated

■ Section 34–10–1–2 speaks of appointed attorneys doing their "duty." It therefore seems to assume that attorneys may be required to work without compensation. This view of the statute is reflected by the dissent, which relies on *Bd. of Comm'rs v. Pollard*, 153 Ind. 371, 55 N.E. 87 (1899). In *Pollard*, this Court attempted to answer the following questions: "Did the appointment of [an attorney] by the Howard circuit court create a charge against the county, and was the order of the court allowing [the attorney] compensation for professional services rendered by him to a poor person in a civil action authorized by law?" The Howard County circuit court appointed an attorney to represent an indigent plaintiff, based on a statute almost identical to today's sections 34–10–1–1 and 34–10–1–2. After rendering his services, the appointed attorney presented the circuit court's compensation order to the Howard County treasurer, who refused to pay.

Although this Court had the opportunity to hold that attorneys may be required to provide free services, it clearly decided otherwise: "An attorney at law cannot, in this state, be compelled by an order of a court to render professional services without compensation." *Id.* While the Court approved holding the county responsible for paying for an appointed attorney for indigent criminal defendants, it reached a different conclusion for civil attorneys. The Court took the view that, in civil cases, not only did the statute contemplate no compensation, courts also had no power to order it. *Id.* at 374, 55 N.E. at 88. Notably, the Court did not address the issue of what to do when no lawyer is available to provide free service in a civil case. Instead, it expressed its confidence that "[t]he eager desire of young practitioners to take part in the exciting contests of the bar" would result in enough volunteers stepping forward to accept appointments under the statute. *Id.*

Although *Pollard* refused to hold that the statute required payment in civil cases, it also refused to press attorneys into uncompensated service. Twice in *Pollard*, this Court clearly stated that attorneys may not be forced to work without compensation. No doubt is left by the Court's admonition that "the attorney cannot be compelled to perform the services . . . and, if he does render them at the request of the court, he does so voluntarily." *Id.* at 375, 55 N.E. at 88.

An attorney may of course choose to accept an appointment without compensation. But if no volunteer attorney is available, Article I, Section 21 of the Indiana Constitution provides that "[n]o person's particular services shall be demanded, without just compensation." We find no support for the proposition that attorneys' services were historically viewed as somehow outside the ban on conscripting "particular services." Shortly after the 1851 Constitution was adopted, this Court held a statute requiring appointment of counsel unconstitutional to the extent it required "the services of an attorney at law to prosecute or defend without fee." *Blythe v. State*, 4 Ind. 525, 525 (1853). Similarly, in *Webb v. Baird*, 6 Ind. 13, 18 (1854), this Court stated, "An attorney of the Court is under no obligation, honorary or otherwise, to volunteer his services." The reasoning in *Webb* rested in large part on the notion that the legal profession, under the 1851 Constitution, was "reduced to . . . a common level with all other provisions and pursuits." *Id.* at 16. This presumably referred to the populist provision inserted into Article VII, Section 21, that "[e]very person of good moral character, being a voter, shall be entitled to admission to

practice law in all courts of justice." After repeated assaults by the legal profession, that provision was finally repealed in 1932, and the modern system of judicial supervision and licensing of the bar was instituted. *See In re Todd,* 208 Ind. 168, 193 N.E. 865 (1935) (holding Article VII, Section 21 was stricken from the Indiana Constitution in the 1932 general election).[4] Even today, several sources suggest an attorney's duty to assist the poor. For example, the Indiana Oath of Attorneys requires every attorney to undertake that "I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed." Indiana Rule of Professional Conduct 6.1 provides, "A lawyer should render public interest legal service . . . by providing professional service at no fee or a reduced fee to persons of limited means." And the Indiana Rules of Professional Conduct Preamble recites, "A lawyer should be mindful . . . of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time . . . in their behalf."

Over a century ago, *Pollard* expressed this Court's confidence in the bar's willingness to supply service on a voluntary basis. We continue to share the hope that a

number of attorneys will voluntarily accept the appointments required by section 34–10–1–2, but we do not adhere to the view that volunteer resources are sufficient to the task. Pro bono commissions and pro bono service providers are now in place to address this need, but every indication is that they cannot realistically be expected to provide counsel for every litigant. As amicus Indiana Civil Liberties Union put it, "[T]here is no doubt that even including the possibility of pro bono representation, . . . existing providers cannot come close to meeting the need for civil legal assistance for indigent litigants." Nor can we rely solely on the philanthropic spirit of the bar to guarantee the proper implementation of the legislature's mandate.

Finally, requiring attorneys to serve involuntarily and without compensation is an impermissible resolution of this impasse. Because one must be licensed to engage in the practice of law, the privilege of a license arguably brings with it an obligation to provide free legal services under section 34–10–1–2. However, notwithstanding the dissent's claims to historical practice, this Court in *Blythe* (1853), *Webb* (1854) and *Pollard* (1899) has consistently rejected the notion that an attorney may be compelled to serve without compensation.[5]

---

**4.** In the 1932 general election, more voters cast ballots for political candidates than on the amendment of Article VII, Section 21. Article XVI of the Indiana Constitution states that final approval of a constitutional amendment is conditioned on ratification by a majority of the "electors of the State." In *Todd,* the petitioner argued that, because the number of votes in favor of the constitutional amendment did not equal a majority of all votes cast in the election, the amendment to Article VII, Section 21 was ineffective. Therefore, according to the petitioner, any imposition of a bar exam by the legislature or this Court was unconstitutional. The petitioner based his contention on prior holdings of this Court that "a proposed amendment which is submitted to the electors at a general

election fails of adoption unless it is approved by a majority of all the voters who vote at the general election." *Todd,* 208 Ind. at 172, 193 N.E. at 866. In *Todd,* this Court changed course and held that "majority of said electors," as stated in Article XVI, means a majority of the votes cast either for or against the particular amendment, not a majority of all votes cast in the election. *Id.* at 205, 193 N.E. at 880.

**5.** The dissent relies on *Bayh v. Sonnenburg,* 573 N.E.2d 398 (Ind.1991), which explained that the phrase "particular services," as used in Article I, Section 21 was not meant to create new rights to compensation where none had previously existed. However, in the very next passage, *Bayh* specifically cites to

Moreover, even after the legal profession became a highly regulated institution, this Court reiterated its view that attorneys cannot be involuntarily impressed into public service. In *Knox County Council v. State ex rel. McCormick,* 217 Ind. 493, 509–10, 29 N.E.2d 405, 412 (1940), this Court explicitly addressed the dissent's "licensed profession" argument:

It is true that members of the bar feel it to be their ethical duty not to withhold their counsel ... to those who are not able to adequately pay, but such ethical obligations are voluntary and cannot be required.... In these modern times practitioners of the professions and of many arts, sciences, trades, and businesses are required to be licensed.... If a law should be enacted requiring every person licensed by the state to render services ... to paupers gratuitously, much difficulty would be found in justifying a decision holding the law unconstitutional as depriving the green grocer or the restaurant operator of his goods, or as depriving the physician, or the barber, or the plumber, or the electrician, or the mechanical engineer of his services, without compensation, while adhering to a rule that licensed attorneys' services may be taken without compensation.

We adhere to this view and hold that the Constitution prevents requiring a specific lawyer to accept employment without compensation in a specific case.[6] The obligation to provide pro bono service is one of the profession as a whole and Article I,

Section 21 prevents a court from imposing it disproportionately on any single attorney.

## IV. Payment from Public Funds

■ For the foregoing reasons, if section 34–10–1–2 sought to impose service without a fee, that section would be unconstitutional. However, the terms of section 34–10–1–2 do not require an attorney to serve without compensation. Section 34–10–1–2 denies the appointed attorney a "fee or reward from the indigent person." Ind.Code § 34–10–1–2 (1998). There is no statutory prohibition disallowing payment to the appointed attorney from other sources. Although the Court in *Pollard* concluded that no mechanism existed for courts to order payment of the appointed civil attorney by the county, it has since been firmly established that courts have "the inherent power and authority to incur and order paid all such expenses as are necessary for the holding of court and the administration of its duties." *Knox County Council v. State ex rel. McCormick,* 217 Ind. 493, 511, 29 N.E.2d 405, 413 (1940) (citation omitted). This authority includes the power "to appoint and require payment of such personnel as the functions of the court may require." *Noble County Council v. State ex rel. Fifer,* 234 Ind. 172, 187, 125 N.E.2d 709, 717 (1955).

Today, the source of that power is found in Indiana Trial Rule 60.5. That rule sets forth the procedure by which courts may seek funds "which are reasonably necessary for the operation of the court or

---

*Blythe* and *Webb*—both cases dealing with attorneys—in making the distinction between services required of all citizens and services that may not be required of only one class of citizens.

**6.** The dissent argues that the reasoning in *McCormick* is inapplicable because it concerned the payment of legal fees for a criminal case, not a civil case. We do not think

that the obligations placed upon the legal profession are somehow more expansive in the civil context, where the source of the appointment is a statute, than in the criminal context, where appointment of counsel for those who cannot afford it is constitutionally mandated. If anything, the distinction cuts in the other direction.

court-related functions." Ind. Trial Rule 60.5.[7] In many cases, it is "the duty of the county council to make the proper appropriation to meet such expense." *Dunn v. State ex rel. Corydon*, 204 Ind. 390, 395, 184 N.E. 535, 536 (1933); *see also Fifer*, 234 Ind. at 187–88, 125 N.E.2d at 717 (court has authority to require county council to pay salary of court appointed probation officer); *McCormick*, 217 Ind. at 512, 29 N.E.2d at 413 (court has power to require county council to pay for appointed attorneys in criminal cases).

If counsel is required to be appointed, the payment of counsel becomes a "reasonably necessary" court-related cost, imposed as a result of the legislature's directive. However, the legislative directive to appoint counsel is only one of several factors that a trial court must weigh before requiring payment of appointed counsel under Trial Rule 60.5. This Court explained that balancing, and the reason for it, in *Overbeck v. Barton*, 471 N.E.2d 1105, 1106 (Ind.1984) (citation omitted):

> It may not be overlooked ... that our system of government does not repose the authority in judges to set salaries for court officials and employees. That duty and responsibility is with others.... In exercising such extraordinary authority, due and full consideration must be given to the possible adverse impact upon any specific governmental interests.

■ An order to pay funds should not be issued by a trial court if "any specific fiscal or other governmental interests [would be] severely and adversely affected by the payment." *In re Court Reporter Salaries in Knox Circuit and Superior Courts*, 713 N.E.2d 280, 282 (Ind.1999). In the context of appointed counsel for criminal defendants, any governmental or fiscal consequences of paying the counsel are necessarily trumped by the constitutional requirements that (1) counsel be appointed and (2) counsel be compensated for the work. As this Court stated in *McCormick*, 217 Ind. at 498, 29 N.E.2d at 407:

> [W]here one who is without means is charged with crime, the question of whether he shall have counsel appointed for him has not been left to the discretion of the court or the Legislature. It has been determined by the people in their Constitutions, national and state, that he shall have counsel....

Because we have systems providing publicly funded counsel for criminal defendants, no mandate is required. But if there were no such provision, courts would be required by the Constitution to exercise their power under Trial Rule 60.5 to direct payment of counsel.

In most civil cases, however, we have only a statutory directive, and there is no constitutional requirement that counsel be appointed for indigent litigants. As explained in Part II, before appointing counsel, the trial court is to consider the type

---

7. Trial Rule 60.5(A) states:
 Courts shall limit their requests for funds to those that are reasonably necessary for the operation of the court or court-related functions. Mandate will not lie for extravagant, arbitrary or unwarranted expenditures nor for personal expenditures (e.g., personal telephone bills, bar association memberships, disciplinary fees).
 Prior to issuing the order, the court shall meet with the mandated party to demonstrate the need for said funds.

Trial Rule 60.5(B), in relevant part, states:
 Whenever a court ... desires to order either a municipality, a political subdivision of the state, or an officer of either to appropriate or to pay unappropriated funds for the operation of the court or court-related functions, such court shall issue and cause to be served upon such municipality, political subdivision or officer an order to show cause why such appropriation or payment should not be made.

of case presented to determine whether even an indigent applicant has "sufficient means" to proceed without appointed counsel. In addition, the trial court is obliged to consider whether any specific fiscal or other governmental interests would be severely and adversely affected by a Trial Rule 60.5 order requiring payment of any appointed counsel.

Christine is correct that appointment in some cases is, to use her word, "absurd." Although most lawsuits represent genuine disputes, some litigants present wholly frivolous cases. Others pursue cases where the amount of money or principles of law are insignificant. Courts are occasionally presented with vendettas and simple sporting exercises. Public funding of counsel in those cases is a waste of public funds. But apart from the amount of public waste involved, appointment of counsel at public expense would severely impair the credibility of the judicial branch. Although the legislature directs appointment of counsel, apparently on the mistaken assumption that attorneys could be required to "do their duty," the appointment and attendant mandate of funds are judicial functions reserved to the courts. As this Court recently observed, "[I]t has been held in a variety of contexts that the legislature cannot interfere with the discharge of judicial duties, or attempt to control judicial functions, or otherwise dictate how the judiciary conducts its order of business." *State v. Monfort*, 723 N.E.2d 407, 411 (Ind.2000). The ultimate credibility of the judicial process must be considered in any exercise of judicial power. Rule 60.5 calls for exercise of judicial judgment, and that judgment cannot be directed by another branch of government consistent with the separation of powers required by Article III of the Indiana Constitution. If no uncompensated attorney is willing to serve and the trial court finds itself unable to order payment, then, for the reasons set forth in Part III, the statutory obligation to appoint counsel fails as an unconstitutional order to attorneys to work without compensation.

## V. Sholes' Request for Appointed Counsel

After the trial court entered a decree of dissolution and distributed Christine and David's marital property, David filed two motions "to proceed as pauper." No determination of either appears in the record. However, confronted with such a motion, the trial court should have determined whether David was indigent and without sufficient means to litigate the dissolution action. An affirmative finding on both questions would result in a statutory mandate that counsel be appointed to David. It is for the trial court to determine whether David has a colorable bona fide dispute over issues warranting the expense of counsel. At that point, if no pro bono service provider is available, the trial court would have to consider whether it has the power, under Trial Rule 60.5, to order payment of counsel, or whether the statutory mandate of section 34–10–1–2 fails in light of overriding considerations that would prevent expenditure of public funds for appointed counsel.

Therefore, we remand with instructions (1) to vacate all proceedings conducted after David's February 19, 1999 "Motion to Proceed as Pauper," (2) determine whether David is indigent and without sufficient means, and (3) if so, determine whether counsel may be appointed consistent with Trial Rule 60.5.

## VI. Conclusion

We grant transfer and reverse and remand to the trial court for proceedings consistent with this opinion.

SHEPARD, C.J., and SULLIVAN, and RUCKER, JJ., concur.

DICKSON, J., concurs and dissents with separate opinion.

DICKSON, Justice, concurring and dissenting.

I agree with the majority's position in parts I (finding that Ind.Code § 34–10–1–2 requires appointment of counsel) and II (regarding the procedure for the appointment of counsel under Ind.Code § 34–10–1–1 and § 34–10–1–2). However, I respectfully dissent from part III of the majority's opinion, which holds that counsel appointed under these provisions must be compensated. I also disagree with section IV of the majority's opinion to the extent that it relies on the majority's holding in section III.

The history of the challenged statute can be traced back almost to statehood. An 1818 statute provided that every poor person who has a cause of action or is a defendant in any suit shall pay nothing for subpoenas and other legal processes, and that the court:

> shall assign to him or her counsel, learned in the law, and appoint all other officers requisite and necessary to be had for the speed of the said suit, *who shall do their duties without any reward for their service,* help and business in the same; and if any counsel so assigned as aforesaid, shall take or receive any fee or reward therefor, either directly or indirectly, he shall forfeit and pay the sum of five hundred dollars, to the use of the party aggrieved, to be recovered by action of debt, with costs of suit.

Laws of Ind. 1818, ch. XIV, § 20 (emphasis added). By 1843, the applicable provision required that upon determination that an applicant is a poor person, the court "shall admit him to prosecute or defend as a poor person, and shall assign him counsel and attorneys, and all other officers requisite for prosecuting or defending his suit, *who shall do their duty therein without taking any fee or reward therefor.*" Rev. Stat. of Ind. 1843, ch. 40, § 68 (emphasis added).

During the ensuing 183 years since the statute's precursor, only one case has addressed whether a lawyer is entitled to payment of fees by the court or county. In 1899, this Court held that a county may not be compelled to compensate a lawyer appointed to represent a poor person in a civil action. In that case, *Board of Commissioners of Howard County v. Pollard,* 153 Ind. 371, 55 N.E. 87 (1899), this Court considered a statute essentially the same as the one under consideration today. The Court looked to the language of the statute and refused to "add to the statute the qualification that the fees of the attorney shall be allowed by the court, and paid by the county. Such a construction would, in our opinion, open the door to grave abuses, and might subject the revenues of the county to serious drains." *Pollard,* 153 Ind. at 374, 55 N.E. at 88. *Pollard* has never been overruled.[1]

In finding that appointed attorneys are entitled to compensation, the majority relies on language in the Indiana Constitution: "[n]o person's particular services shall be demanded, without just compensation." IND. CONST. art. 1, § 21. In *Bayh v. Sonnenburg,* 573 N.E.2d 398, 411 (Ind. 1991), however, this Court explained that Section 21 applies only to *"particular* services," and that when the constitutional convention debated the meaning of the

---

1. The majority notes *Knox County Council v. State ex rel. McCormick,* 217 Ind. 493, 29 N.E.2d 405 (1940), but this case did not involve a claim for legal fees in a civil case. Rather, it involved two attorneys defending a poor person charged with murder. The Knox Circuit Court had granted them attorney fee allowances, but the County Auditor refused make payment. *McCormick,* like the cases upon which it relies, does not decide whether attorneys in *civil* cases must be compensated. These cases do not overrule *Pollard.*

word "particular" as used in that provision, "[i]t is clear that the framers did not intend this clause to create new rights to compensation for services provided to the state that had gone historically uncompensated." *Bayh*, 573 N.E.2d at 413. In fact, the delegates considered and rejected using the word "personal" instead of "particular," several arguing that "its breadth would prevent the State from requiring citizens to perform certain duties previously provided gratuitously." *Bayh*, 573 N.E.2d at 412–13. When the phrase "particular services" was placed in our Constitution, attorneys who served as court-appointed representatives of indigent civil clients were not compensated. There is nothing in the history surrounding the adoption of our Constitution that suggests that Section 21 was intended to change the then-prevailing practice. Because, as *Bayh* emphasizes, Section 21 was not intended to create new rights to compensation, and because, when Section 21 was adopted, attorneys appointed to represent poor persons in civil cases were not entitled to compensation, we should not now expansively construe Section 21 to provide unintended new constitutional rights. The representation of a civil litigant is not a "particular service" that requires compensation under Article 1, Section 21 of the Indiana Constitution.

The majority opinion manifests concern that the entitlement of lawyers to compensation should be equated with that of grocers, physicians, barbers, plumbers, electricians, mechanical engineers, etc. The special obligation of providing free legal service to indigent clients, however, is directly related to what makes lawyers different. In addition to rendering professional services with an expectation of fair compensation, lawyers are also officers of the court. This obligation to the public is an inherent aspect of being a lawyer. It comes with the territory. Construing the

challenged statute to require lawyers to render services without compensation does not lessen the protections of Article 1, Section 21 that prohibit the government from demanding services of persons in other professions and occupations without just compensation.

Reflecting language used in its earlier incarnations dating back to 1818, Indiana Code § 34–10–1–2 requires that attorneys, as officers of the court, "do their duty in the case." Contemporaneous with the adoption of the present Indiana Constitution, the General Assembly enacted a statute listing the duties of an attorney, including: "Never to reject, from any consideration personal to himself, the cause of the defenceless or oppressed." Rev. Stat. of Ind. 1852, vol. 2, pt. 2d, ch. 1, art. XLV, § DCCLXXI (J.J. Bingham 1870). This duty has remained to this day and is expressly included in our present Oath of Attorneys. Ind.Admission and Discipline Rule 22. Upon admission to the practice of law, every Indiana attorney takes an Oath to "never reject, from any consideration personal to myself, the cause of the defenseless or oppressed." *Id.* In addition, the Preamble to the Indiana Rules of Professional Conduct states, "A lawyer should be mindful ... of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time ... in their behalf." Indiana Professional Conduct Rule 6.1 declares: "A lawyer should render public interest legal service.... [B]y providing professional service at no fee or a reduced fee to persons of limited means...."

I strongly disagree with the majority's apprehension regarding the willingness and capacity of Indiana lawyers to voluntarily meet the need for indigent legal services. The lawyers and judges of this state have created, funded, and are imple-

menting a unique and comprehensive new program to place indigent clients with volunteer lawyers. This plan, embodied in Indiana Professional Conduct Rule 6.5, expressly seeks "[t]o ensure statewide access to high quality and timely pro bono civil legal services for persons of limited means." Prof.Cond.R. 6.5(a)(3). This Court adopted Professional Conduct Rule 1.15(d), creating Indiana's IOLTA program (Interest on Lawyers' Trust Accounts) for the purpose of providing funds to administer the Indiana voluntary pro bono program. I have full confidence that Indiana's lawyers, especially with the administrative assistance of the pro bono program created and funded under these rules, can and will fulfill their obligation to provide the necessary free legal services.

I believe that lawyers who accept appointments to represent indigent civil litigants under Indiana Code § 34–10–1–2 are not entitled to demand compensation from either their clients or from the government. From Indiana's earliest days as a state, our laws have required its judges to appoint lawyers for indigent civil litigants, and for the lawyers appointed to do their duty without compensation. Article 1, Section 21 of the Constitution was crafted with this understanding. Then as now, attorneys understand and agree that they are expected to "do their duty in the case" which includes to "never reject, from any consideration personal to myself, the cause of the defenseless or oppressed." We should not undermine these principles.