CRAIG C. CALDWELL, Appellant,
v.
JUANITA CALDWELL, Appellee.
No. 02A03-0602-CV-90
Court of Appeals of Indiana.
December 12, 2006
CRAIG C. CALDWELL, Albion, Indiana, APPELLANT PRO SE.

MEMORANDUM DECISION
DARDEN, Judge.

STATEMENT OF THE CASE
Craig C. Caldwell ("Husband"), pro se, appeals the trial court's order dissolving his marriage to Juanita Caldwell ("Wife") and the trial court's denial of his requests for pauper counsel and paternity blood tests during the course of the dissolution proceeding. We affirm in part, reverse in part, and remand.[1]

ISSUES
1. Whether the trial court erred by denying Husband's petition for pauper counsel.
2. Whether the trial court erred by not ruling onand in effect denying Husband's petition to establish paternity and request for blood tests during the dissolution proceeding.
3. Whether the trial court abused its discretion when dividing the parties' property.
4. Whether the trial court abused its discretion by ordering Husband, who was incarcerated, to have no parenting time until completion of a previously court-ordered program for divorcing parents.

FACTS
Husband and Wife were married on February 19, 1999, and two children were born during their marriage: Gu.C., born December 12, 1999; and Gr.C., born February 1, 2003.
On April 7, 2005, Wife filed a petition for dissolution of marriage and an affidavit of indigency. The trial court approved Wife's petition of indigency and waived Wife's payment of filing fees and costs. The trial court then ordered Husband and Wife to complete a seminar for divorcing parents[2] and, thereafter, to file a certificate of completion within forty-five days of the filing of the dissolution petition. The trial court warned the parties that "violation of this court order may subject the non-complying party to contempt of court proceedings[.]" (App. Vol. II 51) At the time Wife filed her dissolution petition, Husband was incarcerated in the Indiana Department of Correction.[3] On April 29, 2005, Husband filed his notice of appearance, indicating that he would "be acting as his own counsel of record." Id. at 11.
However, on May 13, 2005, Husband filed an affidavit of indigency and a request to proceed "in forma pauper" in the dissolution proceeding and indicated that he would be filing a "determination of paternity" as part of the dissolution. Id. at 12, 14. In his affidavit of indigency, Husband indicated that earned "an average net wage of $13.50 per month" from prison, did not have any cash or bank accounts, and did "not own any real estate . . . or other valuable property (excluding ordinary household furnishings)." Id. at 12. On May 18, 2005, the trial court denied Husband's motion and issued an order, which provided in part: "In considering the relative non-complicated nature and type of the matters at issue, and other matters set forth at I.C. XX-XX-X-X, as well as Allen County, Indiana's present financial difficulties, the Court finds no exceptional circumstances justifying the requested assignment of counsel." Id. at 15.
On May 19, 2005, Wife filed her certification of completion of the divorcing parents course, and the trial court set the final dissolution hearing for September 12, 2005. On May 20, 2005, Husband filed a petition to establish paternity, seeking a blood test to "determin[e] paternity" of Gr.C. Id. at 22. In Husband's affidavit in support of his paternity petition, he alleged that at the time of Gr.C.'s conception, he was in jail (specifically, from April 26, 2002 to May 17, 2002), that he did not have sexual relations with Wife during the period from three days prior to April 26 until three days after May 17, and that while Wife was pregnant with Gr.C., he had been approached by a man, who indicated that the baby that Wife was carrying belonged to this other man. Husband's motion indicated that he was "not denying" Gr.C. but "only asking the Court to confirm" Gr.C.'s paternity. Id. at 24. The trial court did not rule on Husband's paternity motion.
On June 10, 2005, Husband filed a motion for provisional orders and an affidavit in support of his motion. In his affidavit, Husband sought to have "an unlimited amount of parenting time" with the two children, requested that the trial court calculate child support for the children,[4] and asked to have Wife deliver some of his personal property[5] to his sister. Id. at 30. Also in his affidavit, Husband requested equal division of the value of a 1984 Chevrolet Cavalier that had been sold two weeks after it was purchased.[6] The trial court did not rule on Husband's motion for provisional orders.
On July 11, 2005, Husband petitioned for a telephonic hearing on his paternity petition and motion for provisional orders. That same day, Husband filed petitions for a mental health evaluation and for drug testing of Wife to determine her ability to serve "the custodialship of the parties minor children[.]" Id. at 38. Then, on August 1, 2005, Husband again filed a petition for drug testing of Wife. Thereafter, the trial court issued an order indicating that Husband would have telephonic participation in the final dissolution hearing and denying Husband's petitions for a mental health evaluation and drug testing.
On September 12, 2005, the trial court conducted the final dissolution hearing. Wife appeared in person and Husband appeared telephonically, and "[t]he parties waive[d] an electronic/tape recording of the proceedings." Id. at 57. In its decree of dissolution, the trial court indicated that there were two "minor children born of the parties" and that Wife was to get sole legal and physical custody of the children. Id. In regard to parenting time, the trial court noted that both parties had "previously been ordered to complete the approved program for divorcing parenting designed to assist the children in coping with the parties' divorce" and that Husband had not filed a certificate of completion. Id. at 58. The trial court ordered that Husband "have no parenting time pending further order" and directed Husband to "comply with [the divorcing parents class] requirement prior to seeking modification of this parenting time order." Id. The trial court individually awarded Husband and Wife "all items of tangible personal property" in his or her respective possession, "all checking accounts, saving accounts, and intangible property or assets" in their own name, and all employment benefits held in their own name. Id. at 59-60. The trial court noted that "[t]his division of property. . . is a just, reasonable, fair, and equitable award thereof under the facts presented at trial." Id. at 60.
The trial court signed the divorce decree on September 12, 2005 but did not issue it to the parties until December 28, 2005, following Husband's motion to compel. Thereafter, Husband filed a notice of appeal and a motion to stay the execution of the divorce decree. On February 27, 2006, the trial court clerk filed the notice of completion of the clerk's record, noting that there was no transcript to prepare. Thus, on that date, this court acquired jurisdiction. See Ind. Appellate Rule 8.[7]

DECISION
Husband challenges the trial court's order denying his request for pauper counsel, the trial court's failure to rule on his petition to establish paternity and request for blood tests, and the trial court's final dissolution decree regarding distribution of property and parenting time.[8] Before we address each issue, we note that Wife has not filed an appellee's brief.
When the appellee does not submit a brief, we apply a less stringent standard of review with respect to showings of reversible error. We may reverse if the appellant establishes prima facie error, that is, an error at first sight, on first appearance, or on the face of it. When the appellant fails to sustain that burden, we will affirm. We do not undertake the burden of developing arguments for the appellee.
Murfitt v. Murfitt, 809 N.E.2d 332, 333 (Ind. Ct. App. 2004) (citations omitted).

1. Pauper Counsel
Husband first argues that the trial court erred by denying his motion for pauper counsel based on the mandatory language in the pauper counsel statute. Husband cites to Indiana Code section 34-1-1-3, which provides that the trial court, upon finding that an indigent person does not have sufficient means to defend an action, "shall" admit the applicant to defend as a poor person and "shall" assign him an attorney. See Holmes v. Jones, 719 N.E.2d 843, 845 (Ind. Ct. App. 1999) (citing Ind. Code § 34-1-1-3). However, Indiana Code section 34-1-1-3 has been recodified under Indiana Code sections 34-10-1-1 and 34-10-1-2 and amended in 2002.
Indiana Code section 34-10-1-1 provides that "[a]n indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person." Indiana Code section 34-10-1-2 provides, in part:
* * * * *
(b) If the court is satisfied that a person . . . does not have sufficient means to prosecute or defend the action, the court:
(1) shall admit the applicant to prosecute or defend as an indigent person; and
(2) may, under exceptional circumstances, assign an attorney to defend or prosecute the cause.
(c) The factors that a court may consider under subsection (b)(2) include the following:
(1) The likelihood of the applicant prevailing on the merits of the applicant's claim or defense.
(2) The applicant's ability to investigate and present the applicant's claims or defenses without an attorney, given the type and complexity of the facts and legal issues in the action.
(d) The court shall deny an application made under section 1 of this chapter if the court determines any of the following:
(1) The applicant failed to make a diligent effort to obtain an attorney before filing the application.
(2) The applicant is unlikely to prevail on the applicant's claim or defense.
* * * * *
(Emphasis added).
"[A] prisoner has no absolute right to counsel" in civil cases. Sabo v. Sabo, 812 N.E.2d 238, 242 (Ind. Ct. App. 2004) (citing Sholes v. Sholes, 760 N.E.2d 156, 166 (Ind. 2001)). The Sholes court held that in order to decide whether to appoint counsel under Indiana Code section 34-10-1-2, the trial court must determine whether the applicant is "an indigent person" and without "sufficient means" to prosecute his action. Sholes, 760 N.E.2d at 160. The trial court must further determine whether the applicant has a colorable bona fide dispute over issues warranting the expense of counsel. See id. at 166.
The Indiana Supreme Court explained a determination of "indigency" is not to be made on a superficial examination of income and ownership of property but must be based on as thorough an examination of the defendant's total financial picture as is practical. Id. at 161. The trial court must balance the applicant's assets against his liabilities and consider the amount of the applicant's disposable income or other resources reasonably available to him after the payment of fixed or certain obligations. Id.
By contrast, the determination of whether an applicant has "sufficient means" goes beyond a mere snapshot of the applicant's financial status. Id. Rather, the trial court must examine the applicant's status in relation to the type of action before it. Id. Thus, if the action is of the type that is often handled by persons who are not indigent without the presence or assistance of counsel, the trial court may find that even an indigent applicant has "sufficient means" to proceed without appointed counsel. Id. In addition, there are not blanket categories of cases in which counsel should never be appointed. Id. Rather, the trial court should look to the particular issues presented in the action and make a determination of whether the indigent applicant requires appointed counsel. Id.
Here, after Wife filed her dissolution petition, Husband filed an affidavit of indigency and request to proceed in forma pauper. Thereafter, the trial court issued the following order:
The Court has reviewed [Husband's] "Request to Proceed In Forma Pauper," filed herein May 13, 2005. In considering the non-complicated nature and type of the matters at issue, and other matters set forth at I.C. XX-XX-X-X, as well as Allen County, Indiana's present financial difficulties, the Court finds no exceptional circumstances justifying the requested assignment of counsel. Accordingly, the Court now DENIES said motion.
(App. Vol. II 15).
Although the trial court did not explicitly note that Husband was indigent, we deduce that it implicitly made such a finding by virtue of Husband's incarceration and limited income and given the fact that the trial court proceeded to a determination of whether Husband, as an indigent applicant, had sufficient means to prosecute the action.
Because the trial court properly looked to the particular issues presented in the action and determined that Husband had sufficient means to proceed without appointed counsel, we conclude that the court did not err by denying Husband's motion for appointed counsel. See, e.g., Sabo, 812 N.E.2d at 245 ("[D]issolution proceedings are often handled by non-indigent persons without the assistance of counsel."); Boring v. Boring, 775 N.E.2d 1158, 1163 (Ind. Ct. App. 2002) (affirming the trial court's determination that the incarcerated husband had sufficient means to proceed without appointed counsel where the nature of the incarcerated husband's dissolution dispute was not complex).[9]

2. Paternity Petition
Husband argues that the trial court erred by not ruling onand in effect denyingHusband's petition to establish paternity and request for blood tests during the dissolution proceeding. Husband argues that the trial court's failure to order blood tests was contrary to the statute dealing with blood testing in paternity actions, Indiana Code section 31-14-6-1,[10] which provides that "upon the motion of any party, the court shall order all of the parties to a paternity action to undergo blood or genetic testing." (Emphasis added). We agree.
A child born during a marriage is presumed legitimate, and in a divorce proceeding, silence and this presumption will establish paternity. Cooper v. Cooper, 608 N.E.2d 1386, 1387 (Ind. Ct. App. 1993). However, this presumption may be rebutted by direct, clear, and convincing evidence that the husband: (1) is impotent; (2) was absent so as to have no access to the mother; (3) was absent during the entire time the child must have been conceived; (4) was present with the mother only in circumstances which clearly prove there was no sexual intercourse; (5) was sterile during the time the child must have been conceived; or (6) is excluded as the child's father based upon blood grouping test results. Id.
Indeed, "[p]rior to the dissolution court entering support, custody, and visitation orders, the court must first resolve the question of whether the child is a child of the marriage i.e., a biological child of both parents." Cochran v. Cochran, 717 N.E.2d 892, 894 (Ind. Ct. App. 1999), trans. denied; see also Russell v. Russell, 682 N.E.2d 513, 515, 517 (Ind. 1997). The issue of whether a child is a child of the marriage may be "vigorously contested," and the dissolution court has the authority to order blood testing to make a paternity determination. Russell, 682 N.E.2d at 518; Cochran, 717 N.E.2d at 894.
In Cooper, we held that the trial court was required, pursuant to the statute dealing with blood testing in paternity actions,[11] to grant a motion for blood testing when, during the course of a dissolution proceeding, the husband contested the paternity of a child born during the marriage and moved for blood testing. Cooper, 608 N.E.2d at 1387-1388. After determining that the father was a proper party and the paternity claim was timely asserted,[12] we looked at the language of the statute dealing with blood testing in paternity actions"[u]pon the motion of any party, the court shall order all of the parties to the action to undergo blood testing"and held that the "use of the word `shall' indicates that the trial court ha[d] no discretion in deciding to order the tests." Id.
Here, Gr.C. was born on February 1, 2003, when Husband and Wife were still married. In April 2005, Wife filed a dissolution petition alleging that there were two children born to the parties. Husband then filed his paternity petition, which challenged whether Gr.C. was a child of the marriage and requested that the trial court order a blood test to determine paternity. However, the trial court did not rule on Husband's paternity motion, and instead issued the dissolution decree, in which it found that there were two children of the marriage and entered support, custody, and visitation orders regarding both children.
We conclude that Husband was a proper party and the paternity claim was timely asserted[13] and that the failure of the trial court to order blood testing was contrary to Indiana Code section 31-14-6-1, which requires the trial court to order blood tests upon motion of any party. Because the trial court abused its discretion by failing to order blood tests and by failing to resolve the issue of whether Gr.C. was a child of the marriage prior to entering support and visitation orders regarding Gr.C., we reverse the part of the trial court's dissolution decree pertaining to support, custody, and visitation with Gr.C. and remand to the trial court to order blood tests and proceed accordingly. See, e.g., Cooper, 608 N.E.2d at 1388 (holding that the trial court erred by denying the father's motion for blood testing); Cochran, 717 N.E.2d at 894 (holding that the trial court did not err by granting the father's motion for blood testing during the dissolution proceeding).

3. Property Distribution
Husband argues that the trial court abused its discretion when it distributed the parties' property. Our standard of review on this issue is as follows:
We also apply a strict standard of review to a court's distribution of property upon dissolution. The division of marital assets is a matter within the sound discretion of the trial court. The party challenging the trial court's property division bears the burden of proof. That party must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award. Although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court.
Hyde v. Hyde, 751 N.E.2d 761, 765 (Ind. Ct. App. 2001) (citations and internal quotes omitted).
In the final dissolution decree, the trial court found that "[n]o real estate was acquired during the marriage" and awarded Husband and Wife all personal property in their respective possessions and all banking accounts and employment benefits in their own names. (App. 60). The trial court noted that "[t]his division of property . . . is a just, reasonable, fair, and equitable award thereof under the facts presented at trial." Id.
Husband argues that the trial court abused its discretion when it failed to order Wife to surrender Husband's property identified in his petition for provisional order; specifically, Husband argues that the trial court erred by failing to either order Wife to return the 1984 Chevy Cavalier that he purchased in 2003 or to advise him of its location. To support his argument, Husband contends that the trial court told him during the dissolution hearing that it was going to award Husband the vehicle. Husband also refers to his testimony given during the dissolution hearing and argues that the trial court erred by relying on Wife's contradictory testimony, which indicated that the vehicle had been sold.
First, Husband's petition for provisional orders indicates that the 1984 Chevy Cavalier was sold two weeks after it was purchased. In addition, we note that the dissolution hearing was not recorded; thus, the transcript of that hearing is not before us in the record on appeal. "[A]llegations contained in briefs which are unsupported by the record are not viewed as facts." General Collections, Inc. v. Ochoa, 546 N.E.2d 113, 114 (Ind. Ct. App. 1989). Furthermore, even if it were transcribed, we note that upon review of the trial court's dissolution order distributing marital property, we will not reweigh the evidence or assess witness credibility. Stratton v. Stratton, 834 N.E.2d 1146, 1151 (Ind. Ct. App. 2005). The division of marital assets is a matter within the sound discretion of the trial court, and Husband has failed to meet his burden of showing that the trial court abused its discretion in its division of property.

4. Parenting Time
Finally, Husband challenges the trial court's order with respect to visitation. Upon review of a trial court's determination of a visitation issue, we reverse only when the trial court manifestly abuses its discretion. Lasater v. Lasater, 809 N.E.2d 380, 400 (Ind. Ct. App. 2004). No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination. Id. We will neither reweigh evidence nor judge the credibility of witnesses. Id. In all visitation controversies, courts are required to give foremost consideration to the best interests of the child. Id.
"Indiana has long recognized that the rights of parents to visit their children is a precious privilege which should be enjoyed by noncustodial parents." Hanson v. Spolnik, 685 N.E.2d 71, 79 (Ind. Ct. App. 1997), trans. denied. As a result, a noncustodial parent is generally entitled to reasonable visitation rights. Id. However, the right of visitation is subordinated to the best interests of the child. Id. Indiana Code section 31-17-4-1 defines the visitation rights of a noncustodial parent and provides: "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Thus, if the trial court finds that visitation might endanger the child's physical health or significantly impair his or her emotional development, visitation may be denied or restricted. Hanson, 685 N.E.2d at 79.
As noted above, we have reversed the portion of the trial court's dissolution decree pertaining to support, custody, and visitation with Gr.C.; thus, we will review the dissolution decree regarding parenting time with Gu.C. Here, the trial court awarded custody of the Gu.C. to Wife and ordered that Husband was to have no visitation with him. The trial court noted that both Husband and Wife had "previously been ordered to complete the approved program for divorcing parenting designed to assist the children in coping with the parties' divorce" and that Husband had not filed a certificate of completion. (App. 58). The trial court ordered that Husband "have no parenting time pending further order" and directed Husband to "comply with [the divorcing parents class] requirement prior to seeking modification of this parenting time order." Id.
Husband first argues that his due process rights were violated because the trial court denied him parenting time without conducting an evidentiary hearing as required by Indiana Code section 31-17-4-1. We disagree. Here, prior to the trial court's order denying Husband parenting time, the trial court conducted the final dissolution hearing, at which Husband appeared telephonically.
Husband also argues that the trial court's denial of parenting time based upon his completion of the divorcing parents program was error because it was an order "that was un-compliable due to his incarceration." (Husband's Br. 21). Here, the record indicates that the divorcing parents class is presented by "Family Connections" but does not indicate if the class is offered through correspondence or by a means that would be amenable to a person such as Husband who is in prison. While we cannot say that the trial court's requirement that the parties complete a parenting program was an abuse of discretion, we note our concern over whether the trial court's order to Husband, who is incarcerated, is an order to do something that would result in an impossibility and would effectively terminate his right to parenting time without an express finding that visitation would endanger his child's physical or emotional health.[14] Thus, on remand, we instruct the trial court to clarify the nature of the divorcing parents class and to enter an order containing findings sufficient to support a visitation restriction under Indiana Code section 31-14-14-1 based on the evidence presented during the dissolution hearing. See In re Paternity of V.A.M.C., 773 N.E.2d 359, 360 (Ind. Ct. App. 2002) (holding that the trial court's failure to make a specific finding that visitation would harm the child could be remanded to the trial court to either "(1) enter an order containing findings sufficient to support a visitation restriction under Ind. Code § 31-14-14-1 based on the evidence already on the Record, or (2) enter an order that does not contain a visitation restriction").
Affirmed in part, reversed in part, and remanded.
NAJAM, J., and FRIEDLANDER, J., concur.
NOTES
[1] Husband did not include any citations to the appendix in his Statement of the Case and Statement of Facts sections, did not include a copy of the appealed trial court order in his Appellant's Brief, did not include a table of contents in either volume of his Appellant's Appendices, did not paginate his Appendices, and placed documents in his Appendices that were not filed with the trial court under his trial cause number. Thus, we direct Husband's attention to Indiana Appellate Rules 46(A)(5), (6), (10); 50(A), (C); 51(C) regarding the proper handling of these matters.
[2] The trial court ordered Husband and Wife to complete a program for divorcing parents called Connections: The New Parenting Partnership, which was presented by Family Connections. (See App. 51).
[3] In his brief, Husband states that he has been in the Indiana Department of Correction ("DOC") since 2003, after he was arrested and convicted of "unrelated traffic offenses" and that he "will be incarcerated for several more years[.]" (Husband's Br. 2, 20). According to the Indiana DOC website, on March 4, 2004, Husband was sentenced to ten years in the DOC for operating a vehicle while intoxicated as a class D felony and to two years, eleven months, and thirty days for resisting law enforcement as a class D felony, and his earliest possible release date is October 26, 2008. The website also indicates that in July 2004 Husband was sentenced to six months for operating a vehicle while intoxicated as a class D felony and in December 2004 was sentenced to one-year terms for battery and domestic battery but that he has already served his time on those sentences. See http://www.in.gov/serv/indcorrection.
[4] Husband requested that he pay $55.00 per week but that he not be required to pay child support for the children until he was released from prison.
[5] Some of the property requested included a television, leather coat, dinnerware, documents and records, collector coins, and some Harley Davidson manuals.
[6] According to Husband's affidavit, he purchased the vehicle for $225.00 and spent $239.00 on new tires, a battery, and an alternator for the vehicle.
[7] Following our acquisition of jurisdiction, Husband filed various motions with the trial court, including a Statement of Evidence and a Motion to Certify pursuant to Indiana Appellate Rule 31. Husband also filed with this Court a copy of his statement of evidence and motion to certify that he had filed with the trial court. We apparently believed that Husband was requesting "this Court to certify the statement of evidence that he filed with the trial court." (Court of Appeals Order dated August 1, 2006). In August 2006, we issued an order, in which we noted that Husband was requesting "this Court to certify the statement of evidence that he filed with the trial court" and in which we denied Husband's motion to certify the statement of evidence after noting that "[t]he trial court has the duty to approve and settle such statements" and that there was no transcript to prepare. (Court of Appeals Order dated August 1, 2006). In that order, we also ruled that "the trial court [was] relieved of its duty to approve and settle the statement of evidence submitted by [Husband.]" Id. Thereafter, the trial court issued a notice, indicating that we had relieved it of its duty under Appellate Rule 31 to certify the statement of evidence and that it would take no further action on his motion to certify his statement of evidence.
[8] Husband also argues that the trial court erred by failing to rule on his request for provisional orders regarding property distribution and parenting time. Indiana Code section 31-15-4-14 provides that a provisional order terminates at the time final decree is entered, and here, the trial court issued a final dissolution decree addressing property distribution and parenting time. Thus, we will not review Husband's provisional order argument.
[9] Husband also appears to argue that the trial court erred by failing to hold an indigency hearing and refers to the due process clause of the Fourteenth Amendment and open courts provision in Article 1 Section 12 of the Indiana Constitution. Neither Indiana Code section 34-10-1-1 nor section 34-10-1-2 requires a trial court to hold a hearing to determine indigency. Boring, 775 N.E.2d at 1162. In addition, Husband contends that "the denial of court-appointed counsel . . . violates the due process requirements of the Fourteenth Amendment and Article 1 Section 12 of the Indiana Constitution." (Appellant's Br. 14). However, Husband does not cite to any cases supporting such a contention and fails to provide cogent argument otherwise. Thus, he has waived any such constitutional argument. See Tillotson v. Clay County Dep't of Family and Children, 777 N.E.2d 741, 746 (Ind. Ct. App. 2002) (holding that the parents had waived their constitutional claims by failing to provide cogent argument), trans. denied.
[10] Husband alleges that the trial court acted contrary to Indiana Code section 31-6-6.1-8, which is the prior version of Indiana Code section 31-14-6-1.
[11] In Cooper, Indiana Code section 31-6-6.1-8, the prior version of Indiana Code section 31-14-6-1, was in effect.
[12] We noted that the father was a proper party under Indiana Code section 31-6-6.1-2(c) (currently Indiana Code section 31-14-4-1(2)) because he alleged that he was the child's father and that the time for commencing the paternity action was timely under Indiana Code section 31-6-6.1-6 (currently Indiana Code section 31-14-5-3) because the father had provided support for the child; thus, falling into one of the exceptions to the two-year-after-birth limitation.
[13] Husband is a proper party pursuant to Indiana Code section 31-14-4-1(2)), see Cooper, 608 N.E.2d at 1387, and his paternity petition is timely pursuant to Indiana Code section 31-14-5-3 because Husband filed his petition after Wife had acknowledged in writing in her dissolution petition that he was Gr.C.'s father, thus falling into one of the exceptions to the two-year-after-birth limitation. See Indiana Code section 31-14-5-3(b)(4); In re Paternity of K.H., 709 N.E.2d 1033, 1035 (Ind. Ct. App. 1999) (holding that the father's paternity petition was timely filed under an exception to the two-year statute of limitations for filing a paternity action because the mother had acknowledged in a letter that the father was the father of the child).
[14] The trial court's dissolution decree does not contain an express finding that visitation "might endanger the child[ren]'s physical health or significantly impair the child[ren]'s emotional development[,]" and we do not have the transcript of the dissolution hearing to determine if the evidence would, nevertheless, support such a finding.